# CHARLESTON.

## EVANS *v.* JOHNSON *et al.*

Submitted January 29, 1894.—Decided April 4, 1894.

1. LUNATIC—COMMITTEE—NOTICE.
 A county court or its clerk can not appoint a committee for a person as insane without notice to him. Such an appointment is void and confers no authority. DENT, JUDGE, dissenting.

2. LUNATIC—COMMITTEE.
 Until chapter 87, Acts 1891 (Code 1891, c. 118, s. 1) a committee could not resign.

3. LAPSE OF TIME—LIMITATIONS OF ACTIONS—PRESUMPTION—PURCHASE-MONEY.
 No time bars the right, either under the statute of limitations or presumption of payment, of a vendor to recover purchase-money for land, if he has not parted with the legal title.

4. LAPSE OF TIME—LIMITATIONS OF ACTIONS—PRESUMPTION—PURCHASE-MONEY.
 The statute of limitations has no application to bar a lien for

purchase-money reserved in a conveyance of land. Though action on a note given for such purchase-money be barred, so as to defeat its collection out of other property of the debtor, the lien against the particular land conveyed is not barred. Presumption of payment from lapse of time and laches, unless repelled and explained, will defeat enforcement of such lien.

BERKSHIRE & STURGISS, for appellant cited Code (1891) c. 118, s. 1 ; Id. c. 58, s. 37, 38 ; 23 Gratt. 212 ; 24 W. Va. 594; 4 W. Va. 443; 16 Ohio 59.

KECK and OKEY JOHNSON, for appellee.

BRANNON, PRESIDENT :

Evan Morgan owned an interest in a tract of land in Monongalia county. Omer B. Johnson, as his guardian, upon petition obtained from the Circuit Court of that county an order to sell his ward's interest in the land and did sell it to Elza L. Morgan, who executed to said guardian two notes for deferred instalments of purchase-money. Under authority of the order of sale a special commissioner made to the purchaser a deed conveying said infant's interest in the tract of land retaining a lien for said notes. Afterwards, when said infant had become of age, the clerk of the County Court of Taylor county appointed Hiel J. Evans committee of said Evan Morgan as an insane person, and said committee brought this chancery suit against said Johnson, Elza L. Morgan and others for the purpose of charging Johnson as guardian of said Evan Morgan with liability to his ward for the amount of said notes made to him by the purchaser of said interest in said land, because he had been chargeable with their collection, and to settle his account as guardian, and also to enforce the lien existing for the notes under said sale and deed to the purchaser, the bill alleging that they had not been paid.

The notes were dated December 3, 1868, and this suit to collect them was brought in 1887. By deed of May 30, 1887, from Elza L. Morgan, for himself and as attorney in fact for a brother and coparcener, to Thornton Pickenpaugh and a deed of October, 20, 1887, from Minerva A. Fleming, another coparcener, to said Pickenpaugh, Pickenpaugh became owner of the entire tract, including the share of

said Evan Morgan which had been sold under said court order and purchased by Elza L. Morgan. Pickenpaugh is a party to the cause.

The court entered a decree holding the said interest in said tract of land liable for the payment of said notes given by Elza L. Morgan for said interest, and subjecting it to sale in enforcement of said lien, and from this decree Pickenpaugh appeals. Pending the suit, Hiel J. Evans resigned his office of committee, and Justus F. Ross was appointed in his place by the County Court of Taylor, and the suit was ordered to proceed in the name of said Ross as committee in place of Evans.

The brief of appellant's counsel in its opening presents what in its nature is the first question for us to decide, by insisting that the plaintiff has no right to recover in this suit or any suit. The first reason given by counsel for this contention is, that the appointment of Hiel J. Evans to be committee of Evan Morgan as an insane person is void for want of notice to said Evan Morgan. In *Lance* v. *McCoy*, 34 W. Va. 416 (12 S. E. Rep. 728) the opinion is expressed that such an appointment by a County Court without notice, as required by Code, c. 58, s. 34, is void. A re-examination of this question in this case has confirmed me in the view then expressed.

The question is of importance, both because of its frequent occurrence and of its effect upon persons alleged to be insane. So far as my observation has gone, the practice has been, in clerks' offices of the County Courts and in County Courts, to make such appointments without such notice. It lies at the foundation of justice in all legal proceedings that the person to be affected have notice of such proceedings. As such an appointment takes from the person the possession and control of his property and even his freedom of person, and commits his property, his person, his liberty to another, stamps him with the stigma of insanity, and degrades him in public estimation, no more important order touching a man can be made, short of conviction of infamous crime. Will it be said, in answer to this, that he is insane, and that notice to an insane man will do him no good ? The reply is, that his insanity is the

very question to be tried, and he the only party interested in the issue. In many cases, if notice be given him, he will be prompt to attend and in person be the unanswerable witness of his sanity. In some cases, if notice be not given him, those interested in using his property or robbing him of it will effectuate a corrupt plan. Almost as well might we convict a man of crime without notice.

There is abundant authority for this position. Even though the statute be silent regarding notice, as ours is in the matter of appointment of committees by the County Courts, though the statute providing for the appointment by Circuit Court requires notice, yet the common-law steps in and requires it. See *Chase* v. *Hathaway*, 14 Mass. 222, 224; *Hathaway* v. *Clark*, 5 Pick. 490; *Hutchins* v. *Johnson*, 12 Conn. 376; *McCurry* v. *Hooper*, 46 Am. Dec. 280; *Board* v. *Budlong*, 51 Barb. 493; *Eslava* v. *Lepretre*, 21 Ala. 504; *Dutcher* v. *Hill*, 77 Am. Dec. 572; Busw. Insan. § 55; *Stafford* v. *Stafford*, 1 Mart. (N. S.) 551. In *Molton* v. *Henderson*, 62 Ala. 426, it was held that "inquisition of lunacy without personal notice to the alleged *non compos* is void, and so is the appointment by the probate court of a guardian for said lunatic, and the proceedings by such guardian for a sale of lands belonging to said lunatic." A statute authorizing an inebriate to be committed to a hospital on *ex parte* proceeding was held void by the New York Supreme Court. *In re Janes*, 30 How. Pr. 446.

In Georgia the statute required notice to three relatives of the person before appointment of a guardian over him as an insane person. Judge Bleckley delivering the opinion, thought there ought to be also notice to the person. He said: "It is, to say the least, doubtful whether the property of an adult citizen can be taken out of his custody and committed to guardianship without previous warning served either upon him or some person duly constituted by law or some legal tribunal to be notified in his stead. *Morton* v. *Sims*, 64 Ga. 298. If it was unreasonable in the opinion of a Roman governor to send up a prisoner and not signify withal the crimes alleged against him, the law judges it to be equally so to pass upon the dearest civil rights of the citizen, without first giving him notice of his

adversary's complaint. The truth is that at the door of every temple of the law in this broad land stands justice with her preliminary requirement upon all administrations. You shall condemn no man unheard. The requirement is as old, at least, as *Magna Charta.* It is the most precious of all the gifts of freedom, that no man be disseised of his property or deprived of his liberty or in any way injured *nisi per legale judicium parium suorum, vel per legem terrae.* It is a principle of natural justice, which courts are never at liberty to dispense with, unless under the mandate of positive law, that no person shall be condemned unheard." He said that in that case there was "action, trial, and judgment in two days, and no previous notice." In our practice it often occurs in ten minutes.

This practice, I say, as was said by the Louisiana court in *Stafford* v. *Stafford, supra,* might put, "the wisest man in the community under the control of a *curator,* and hold him up to the world as an adjudged insane." Both constitution and statute confer this power on the county courts as a jurisdiction. Before appointing the court must determine whether or not the fact, which alone gives it power to act, exists; that is, whether the party is in any of the phases or conditions of mind to be considered insane under the statute. It must inquire into the fact, and in deciding exercise judgment, and of this legal investigation, all important to him, he ought to have notice. He wants to deny the very basis of the proposed order—his insanity. It is an important transaction to him. Shall he have no notice of it? Am I told that the statute does not in terms require notice? I answer as shown in *Lance* v. *McCoy,* 34 W. Va. 416 (12 S. E. Rep. 728) as a circuit court can not appoint without it, so by proper construction of the Code neither can a county court. I answer, further, that a statute will not be construed to authorize proceedings affecting a man's person or property without notice. It does not dispense with notice. Bish. Writ. Law, §§ 25, 141; *Chase* v. *Hathaway,* 14 Mass. 222, 224; *Arthur* v. *State,* 22 Ala. 61; End. Interp. St. § 262; *Boonville* v. *Ormrod,* 26 Mo. 193; *Wickham* v. *Page,* 49 Mo. 526. Chief Justice Marshall held void a judgment of even a court martial imposing fines on militia men, be-

cause without notice. *Meade* v. *Deputy Marshal*, 1 Brock. 324 (Fed. Cas. No. 9372). This statute is one of summary proceeding.

If the case were one of mere error or irregularity, it might be said that the order was good against collateral attack and must be reversed by a direct proceeding; but the question is one of jurisdiction—a want of authority to make the order for want of jurisdiction over the person to be affected. How can his property be affected or title given the committee to enable him to sue for it, if the order is void as to the person? If he is not affected by the order, how is his property? If the committee would restrain the person of the *non compos*, could he not release himself by treating the order as void? I can not see how an order of a clerk fixing the personal status of a person without notice can rob him of his property and vest title in another person. A tribunal may have jurisdiction of cases *ejusdem generis* with the matter involved in a proceeding before it, and it may have jurisdiction of the particular matter involved in that particular case; but if it have no jurisdiction of the person by service of process or appearance, if the proceeding is not *in rem*, it can not go on. Though the Taylor County Court has jurisdiction to appoint committees for insane persons, and though it had lawful jurisdiction to act on the matter of the appointment of a committee in the particular instance of Evan Morgan, yet it could not act without notice to him; unless we say notice was not required by law, which I have above sought to show is not the case.

A sentence of the court without hearing the party or giving him an opportunity to be heard is not a judicial determination of his rights and is not entitled to any respect in any other tribunal. Jurisdiction is indispensable to the validity of all judicial proceedings. Jurisdiction of the person as well as the subject-matter are prerequisites and must exist, before a court can render a valid judgment or decree; and, if either of these is wanting, all the proceedings are void. So said the court literally in *Haymond* v. *Camden*, 22 W. Va. 180, Syll. p'ts 5, 9. So it has often held as shown by Judge GREEN in the opinion in *McCoy* v. *McCoy*, 29 W. Va. 807 (2 S. E. Rep. 809). No court has more sturdily

held the rule of necessity of process or appearance than this Court, whether as to proceedings of superior or inferior courts. Must there be process before a superior court can render merely money judgment, and yet no notice before a clerk can stamp a man with insanity and take from him his property and freedom of person? Cases may exist of appointment of committees or guardian for *non compotes mentis* without notice appearing, in which they were held good against collateral attack; but it will be found, that they were in courts of probate held to be courts of general jurisdiction, or where after inquisition the party traversed the finding or had opportunity to do so.

The next question is: If as in this case, it does not appear from the order of appointment, that such notice was given, can want of notice affect the order? The county court is a court of limited jurisdiction not a court of record; and as to such courts the rule applies, that their jurisdiction must appear and will not be presumed; whereas, as to courts of general jurisdiction, their jurisdiction will be presumed and need not affirmatively appear, unless the want of jurisdiction does appear. *Mayer* v. *Adams*, 27 W. Va. 244; *Davis* v. *Town of Point Pleasant*, 32 W. Va. 294 (9 S. E Rep. 228); *Wandling* v. *Straw*, 25 W. Va. 692; 1 Cooley Const. Lim. 406. It is a summary proceeding, and notice must appear. *Arthur* v. *State*, 22 Ala. 61. The county court being a court of limited jurisdiction, it must appear, not only that it had jurisdiction as to the subject-matter but also over the person by service of process or notice. *Mayer* v. *Adams*, 27 W. Va. 244; 2 Black Judgm. §§ 282, 633.

When we say there must be jurisdiction, we mean both that the matter and the person to be affected must be within the jurisdiction of the court by service of notice upon him. Cooley Const. Lim. 403. I maintain that such action as the appointment of a committee for one as insane without notice, is so grave in its effects upon his personal status, his right to vote, liberty, and property, that it is not due process of law. It violates the definition by Mr. Webster in the Dartmouth College Case, generally received as a proper one, of due process of law, that "it hears before it condemns."

The committee in this case resigned, and another was appointed in his room. Invested with no authority he had none to resign. But, if he had been regularly appointed, could he resign, and could the county court accept his resignation ? At common law I think not. An executor or administrator, once having taken his office, can not resign it. Schouler says, that if precedents can be trusted, they can not resign unless under statute ; "for the English rule always discountenanced such a practice as to these and similar fiduciaries." 1 Woer. Adm'n § 273; Schou. Ex'rs, § 157. In *Henslocs' Case*, 9 Coke, 36a, the law is stated thus : "For after the executors have once administered, and so have taken upon them the charge of the executor-ship, they can not afterwards refuse." And on page 37a it states that the ordinary can not accept their resignation. So held, also, in *Wankford* v. *Wankford*, 1 Salk. 308. So in *Parten's Case*, 1 Mod. 213. So in *Sitzman* v. *Pacguette*, 13 Wis. 291 ; *Ford* v. *Travis*, 2 Brev. 299, cited with approval by Chief Justice Marshall in *Griffith* v. *Frazier*, 8 Cranch. 27; *Washington* v. *Blunt*, 8 Ired. Eq. 253; *Haigood* v. *Wells*, 1 Hill, Eq. 59 ; *Sears* v. *Dillingham*, 12 Mass. 358. In *Flinn* v. *Chase*, 4 Denio. 86, held that the surrogate had no jurisdiction to accept an administrator's resignation and appoint another. At common law a guardian can not resign. Schou. Dom. Rel. 426. Under our Code, c. 82, s. 7, a guardian may resign. I have met with only one case (*Morgan's Case* 3 Bland, Ch. 332) holding that a committee may resign ; but there is no opinion or authority cited, and the facts are not given. I conclude that without statute leave a committee can not resign. An act passed in March, 1891 (Code 1891, c. 118, s. 1) allows a committee and fiduciary to resign on filing a petition and proceeding as therein directed ; but this resignation was in 1889. The resignation being ineffectual, it left Evans yet in office, and, the office being full, the appointment of Ross in his place would be void and confer no authority on Ross. Per Moncure, J., in *Andrews* v. *Avory*, 14 Gratt. 236 ; *Griffith* v. *Frazier*, 8 Cranch, 9 ; *Haynes* v. *Meeks*, 20 Cal. 288. It is not meant to say that public officers of government may not resign. As to them the general rule is that they may resign. Mech. Pub. Off. § 409

*Edwards* v. *U. S.*, 103 U. S. 471. Evans having no office, could resign none; and derivatively from him, as filling his place, no power vested in Ross.

But it may be thought, that the appointment of Ross ought to be treated, not as filling a vacancy caused by Evans's resignation, but as an original appointment. If so, it would be subject to the same objection for want of notice as the appointment of Evans.

What is the consequence of neither Evans nor Ross being a committee? A want of title to prosecute this suit. What title has either to enforce the lien, or to the notes secured by it? None. Evans could not bring the suit. It could not be ordered to proceed in the name of his successor, Ross, and the debt could not be decreed to Ross. Would a payment to him be good? If the appointment be void as to the insane person, if he could resist or disregard it, would a sale or payment under decree in this case protect against re-sale at the demand of a lawfully appointed committee, or Evan Morgan himself? Ought the court to impose these dangers on the late guardian, the purchaser, and his alienee, Pickenpaugh?

The defence was made that there is no lien for unpaid purchase-money, because the deed reserving it has no seal. The order giving the guardian authority to sell the land of the infant provided, that either on payment of purchase-money or earlier by retaining a lien for it Hough as special commissioner should convey the land to the purchaser. As there is no scroll or seal to the deed, we must say it is not a deed and does not pass legal title; but does the purchaser get the land for nothing? Is there no lien? Viewing the said paper alone, if it is effective to pass any interest in the land, it is effective equally so to reserve a lien on that interest. If we treat it as a contract to convey passing equitable title, of course there is a lien, as a vendor has a lien for purchase-money as long as he retains title. *Yancey* v. *Mauck*, 15 Gratt. 300, and citations. If another deed were made, a lien could be reserved in it, for without reserving right in a sale of realty to reserve a lien in the final deed of conveyance that right exists. *Findley* v. *Armstrong*, 23 W. Va. 113. The vendor can never be compelled to part with

the legal title without payment or security.   It seems to be thought in this case that it is the deed which creates the lien, and, as the paper is not a deed, it creates no lien ; but there is an implied lien springing from the sale existing until the legal title is passed by deed, and that deed reserving it only reserves an already existing antecedent lien and does not originate it.   That paper, so far as it might be deemed necessary to look to it, is competent to preserve that lien.   But the sale under the decree was attended with a lien.   The court only directed the legal title to pass on actual payment or by reservation of a lien.   The title has not passed to the purchaser, Elza L. Morgan, and the lien exists.   The commissioner could not convey free of lien. Pickenpaugh took it of course subject to the lien, because he took only what his vendor, Elza L. Morgan, had—an equitable, inchoate title ; and, also, because he is affected with notice of incumbrance on the face of papers, under which Morgan derived title, and both decree and the defective deed told of the lien.   If, as suggested in the brief, it be viewed as a private sale by the guardian, the same principle would apply ; the lien would exist.

Time is relied on to defeat the debt.   In no view can this position prevail.   Viewed as a case where the legal title has not passed to the vendee, as it is to be viewed, the statute of limitations has no application.   *Hopkins* v. *Cockerell*, 2 Gratt. 88 ; *Hanna* v. *Wilson*, 3 Gratt 243.   The statute has no application to a lien reserved in a deed passing legal title.   *Hull's Adm'r* v. *Hull's Heirs*, 35 W. Va. 155, 165 (13 S. E. Rep. 49) ; Bart. Ch. Pr. 111, note 5.   Though the note given for purchase-money, be barred as a personal debt, yet the lien remains unaffected by the statute operations against the land.   *Cole* v. *Withers*, 33 Gratt. 194.   The statute, perhaps, is not intended to be specifically relied upon, but laches and staleness of demand are.   This defence can not be maintained. One note fell due December 8, 1869, the other December 8, 1870, and this suit began May 17, 1887.   Only a presumption of payment of twenty years would operate, and that had not elapsed.   Besides, that is not a positive bar, but only a presumption which may be repelled by proof of the continued existence of the debt.

The paper signed by Elza L. Morgan July 5, 1880, admits both notes to be then unpaid.

As to the release dated July 5, 1880, by the mother and brothers of Evan Morgan, it is contended for by Pickenpaugh that it precluded a recovery of said debt. It recites the sale;—that Omer Johnson had as guardian never collected the two purchase-money notes of Elza L. Morgan; that recovery was barred as to the surety in them;—that said guardian was not at fault for not collecting them, as his omission arose out of an agreement between the brothers and mother of Evan Morgan, that Elza L. Morgan should keep Evan, when required, and have enough of the notes applied to reimburse him;—and that to indemnify and save harmless the late guardian, Johnson, said mother and brothers released him from all liability as guardian and on account of such sale and delay of collection, unless he should collect said notes. Now the whole purpose of this instrument was to release the guardian, not Elza L. Morgan. Instead of releasing him it closed with a proviso looking to the probability of the collection of valid notes. As to any agreement between the mother and brothers of Evan Morgan, how could it release a debt due him? Who gave them power to stay the enforcement of the debt? The fact, that they would be distributees in the event of Evan Morgan's death, gave them no vested interest whatever to sell, release or in any manner to affect the debt. The mother of Evan Morgan has kept him, not Elza L. Morgan. It is claimed, he paid her some money for keeping him. She positively denies it on oath. Why did not Elza Morgan give evidence of it? A witness states a circumstance —a mere circumstance—tending slightly to show the probability that he made a payment; but it is inconclusive, very weak in effect. The amount is not shown. He must make it certain. No payment of the debt by Elza L. Morgan by paying Mrs. Morgan for keeping Evan or otherwise is shown.

The argument, that the fact, that there is an adequate remedy by suit on the guardian's bond, forbidding a chancery suit, is without force. Equity is the proper forum in which to enforce the liens, and it is proper to enforce that

lien to collect the debt before going on the guardian to make good the debt. There stands the land for the debt. The ultimate responsibility rests on Elza L. Morgan and the land; and no court of justice would lodge the liability in the first instance on the guardian Johnson, and exonerate the land at the instance of Elza L. Morgan, the debtor, who agreed to pay Johnson and never paid him, or at Pickenpaugh's instance, claiming under Elza L. Morgan, even without the existence of said paper releasing Johnson, which paper Elza L. Morgan executed; and more surely yet no court would do so in view of that release. With what justice can he or one claiming under him ask that the liability at the first step be saddled on Johnson? To do so would be inequitable and against the contract of the parties.

It is suggested, if I am not in error as to the brief of counsel, that there is no privity between the plaintiff and Elza L. Morgan and Pickenpaugh, as the notes were made to Johnson as guardian. If it is meant to say that, because the notes were made to Johnson, a lawful committee of Evan Morgan can not sue on them, I can not concur in that view. When the guardianship ended upon the majority of Evan Morgan, he was entitled to the debt, and even if we could say that the legal title to the debt under the notes was in Johnson, which I doubt, but have not examined the question, because it is immaterial, I am very sure that a court of equity would entertain a suit by a lawful committee, and having Johnson and other proper parties before it would decree the debt into the hands of the committee.

The decree is reversed and bill dismissed without prejudice to any other suit by Evan Morgan or any lawful committee. No prejudice against the collection of the debt shall result from this decision.

---

Dent, Judge (*dissenting*):

In so far as the foregoing decision is in effect a determination that a conceded idiot must have notice before the

clerk of the County Court can appoint a committee for him, I can not concur.

"An idiot or natural fool is one that hath had no understanding from his nativity, and therefore is presumed never likely to attain any." 1 Bl. Comm. 301.—"An idiot is known by his perpetual infirmity of nature; a nativitate, for he never had any sense or understanding." Ewell Lead. Cas. 528.—"Idiots are classified by themselves as mental infants with congenital obstacles to development." Ordr. Jud. Ins. 50.

Evan Morgan is conceded in this case to be a helpless idiot from his birth, never having been able to hear, speak or take care of himself. This is undeniable. Such being his undisputed state, a committee was appointed for him by the clerk of the County Court of Taylor county at the instance of those having him in charge. This appointment is held void because the order of the clerk does not show that the idiot had been served with notice. Why give him notice? His capacity was less than a child's three months old, yet the court would hardly hold that a child of such an age must have notice before a guardian could be appointed for it. A dumb brute has more intelligence, and a notice served on such would be just as effective. The court answers, "So that, in case he is not an idiot or his sanity is in question, he may defend himself."

In cases of doubtful sanity or insanity the clerk has no jurisdiction, and an order appointing a committee made by him with or without notice would be a nullity just as if he should appoint a guardian for an adult. The jurisdiction in cases of suspected insanity is conferred exclusively on justices and the circuit courts by sections 9, 33–35, c. 58, of the Code, and there is no statutory enactment conferring such jurisdiction on county courts or their clerks. The clerk acts merely in a ministerial capacity in appointing a committee for a known idiot, and therefore a notice is neither required nor would it be other than useless. An idiot needs no adjudication to establish the fact, but he is so by nature, known and recognized by all men; and, whenever notice is necessary, the clerk is without jurisdiction, and his proceedings are void, as in such a case the subject of the notice would not be an idiot,

It is true that this Court in the case of *Lance* v. *McCoy*, 34 W. Va. 416 (12 S. E. Rep. 728) under a misconception of the jurisdiction of the county court finding a supposed hiatus in the law, proceeded to legislate, at least impliedly, in favor of the jurisdiction of said court in cases of suspected insanity, and enacted, by a kind of parity of reasoning, that the county court should not appoint a committee without first giving five days' notice to the suspected ; and now by this decision the provisions of this enactment are extended to include well-known idiots as well as suspected lunatics, not, however, for the purpose in its result of protecting the idiot or his estate, but to allow the appellant to escape his liability temporarily with the sure promise of bringing him to certain justice later on. The justification of this exercise of legislative functions is section 24, Art. VIII of the Constitution, to wit :

"They shall have jurisdiction in all matters of probate, the appointment and qualification of personal representatives, guardians, committees and curators."

And this is construed without legislative enactment to include authority to examine into cases of suspected insanity.

The legislature did not so consider it and hence it conferred exclusive power in such cases on the justices and the circuit courts. If it had deemed it wise or necessary to do so it would have conferred this power on the county courts by legislative enactment as it was formerly under the laws of Virginia but never has been the law of this state except by judicial construction as aforesaid directly in contravention of the will of the legislature.

To my mind such decisons as these are an unjustifiable and unnecessary usurpation of legislative powers on the part of this Court.

As to the laws of Virginia, see Code (1860) c. 85, ss. 50, 51, 52 and 53.