## CHARLESTON.

GEO. SCHUTTE v. HENRY M. SCHUTTE *et al.*

Submitted September 7, 1920. Decided September 21, 1920.

2.  SAME—*Evidence Held to Raise Reasonable Doubt as to Petitioner's Sanity, Entitling Him to a Discharge.*

On an issue as to the sanity of a person under restraint of his liberty, on the ground of insanity, reasonable doubt as to his mental condition entitles him to liberation.  (p. 704).

2.  SAME—*Evidence Held to Raise Reasonable Doubt as to Petitioner's Sanity, Entitling Him to a Discharge.*

If, in such case, the mentality of the accused is not generally impaired and he is admittedly able to transact business efficiently and to properly demean himself among his neighors and friends; but he is alleged to be suffering from paranoia, a form of insanity characterized and evidenced by delusions, sometimes concealed, and laboring under a delusion as to his wife's demeanor and conduct, which, it is said, impels him to irrational acts and conduct respecting her; and the evidence

of the alleged delusion, constituting, for the most part, the basis of expert evidence of his insanity, consists of the testimony of herself and her close relatives; uncertainty as to her motive in the lunacy proceeding, his mental soundness in general, inability of his friends and associates, some of them being physicians, to detect any indications of his insanity, and his abstention from pursuit or molestation of the wife, during a considerable period of practical freedom, after his commitment, are sufficient to raise such doubt.   (p. 704).

(WILLIAMS, PRESIDENT, absent.)

Error to Circuit Court, Harrison County.

Habeas corpus by George Schutte against Henry M. Schutte and others, to obtain petitioner's discharge from custody of a committee appointed by a lunacy commission to take charge of petitioner and his property. Judgment for defendants, and petitioner brings error.

*Reversed, and petitioner discharged.*

*J. E. Law, A. F. McCue,* and *John C. Southern,* for plaintiff in error.

*Carter & Sheets* and *Glenn F. Williams,* for defendants in error.

POFFENBARGER, JUDGE:

Plaintiff in error having been declared insane by a lunacy commission, in consequence of which a committee appointed for the purpose has taken charge of him and his property, sought his discharge and restoration to liberty on a writ of *habeas corpus.* Upon a very full hearing, the court below found that he was able to distinguish between right and wrong in everything except the subjects of certain alleged delusions; that his mental powers, generally speaking, are unimpaired; and that he is competent to transact business. But, being of the opinion that he is afflicted with progressive paranoia, a form of insanity, evidenced largely, if not solely, by certain beliefs and conduct respecting his wife, the court declined to discharge or liberate him, and, to the judgment denying him relief, he obtained this writ of error.

Unfortunately, the inquiry as to the mental condition of Schutte is embarrassed by domestic trouble. He believes his

wife has been unfaithful to him and she instituted the proceeding against him, in which he was adjudged to be insane. There is much evidence in the case tending rather strongly to prove that, before and at the time of the development or disclosure of his alleged mental impairment, her conduct was indiscreet, unguarded and unbecoming in a wife. Her attitude or status as his wife, is the subject of his alleged delusion largely relied upon by expert witnesses, as proof of the existence of paranoia. Her testimony corroborated by other witnesses tends to prove a rather sudden development of mental weakness or aberration manifesting itself in abnormal and peculiar actions and declarations accompanied by weeping without apparent occasion and admissions of wrong impulses and purposes he could not restrain. Professing, to believe without reason, she protests, her unfaithful and unchaste, along with nearly all other women, she says he adopted a persistent and relentless policy of persecution toward her, in the course of which he made insulting and indecent accusations against her, found fault with her manner of dressing, injured a pair of her shoes, threatened to destroy all of her clothing and gathered it up for that purpose, declared he would kill her, subjected her, on one or more occasions, to violence, secreted himself in a position which enabled him to overhear her conversations with others, accused her of keeping the window blinds up so she could see other men and be seen by them and otherwise conducted himself in an irrational manner. For the most part, this conduct was observed only by herself and a sister who resided with her. A sister-in-law, secreted in the house for the purpose by arrangement with the wife, claims to have overheard a conversation in which he upbraided her about her manner of dressing and her use of paint and powder and accused her of running around. This occurred about the day before the lunacy warrant issued on the wife's complaint. The wife and sister say he was secretive in this conduct, always ceasing on the approach of visitors and threatening them with violence in case they should disclose it. The husband of one of his wife's sister's, D. S. Cain, says he acted strangely at his house on one occasion. Cain's wife testifies to the same incident and Schutte's declaration that he had not treated his wife right and that he wanted "to do things to spite her." Several of his neighbors and friends, three of whom

are physicians, swear they have seen him frequently, have observed nothing peculiar or erratic in his conduct, and believe him to be perfectly rational and as sound in mind as he ever was. One of these physicians is now his committee and next door neighbor, and he has discovered no evidence of insanity in his conduct or conversation. He admits his suspicions and jealousy of his wife, avows his belief in her guilt, charges her with neglect of household duties, claims she avowed her love of another man, insists that their relations have been strained for about four years and admits he pushed or shoved her on one occasion, but denies he ever threatened her life.

The only justification in the trial court's opinion, or in the argument submitted here, for the restraint complained of, is the possibility or probability of danger to the wife and daughter or other persons. His ability to transact business efficiently and to demean himself properly among his neighbors is clearly proved and really not denied. There is no evidence of any actual assault upon the wife or any other person, with homicidal intent. As to threats of such assaults, there is conflict in the evidence, she and her sister asserting it and he denying it. That there was trouble between them, both admit, she claiming it was maniacal conduct on his part, which she endured, with sorrow and sympathy for him, as long as she deemed it safe to do so. The times of its origin and his alleged mental impairment are also in conflict, he claimed the jalousy arose about 1916 or 1917, and she, that it first became manifest early in the year 1919, after an attack of influenza he had in the latter part of 1918, and was a consequence of the mental collapse. On the other hand, he claims the previously existing trouble was intensified by additional disclosures, early in 1919, and that the intensification thereof was merely coincident in point of time, with the charge of insanity made by her and certain physicians and other persons she seems to have consulted and advised with. If all she charges and swears to is true, it is difficult to reconcile all of his conduct with the theory of sanity, part of which consisted of his own admissions of unjust, brutal and wholly inexcusable treatment of her, inflicted under the influence of uncontrolable impulses and inclinations. On her testimony and that of her close relatives and partisans, as

to irrational and delusive acts and conduct, the opinions of the expert witnesses are largely predicated. The expert witnesses examined him, but, in that examination and their conclusions, they used and relied upon what they call the history of his case, obtained from her and other witnesses, without which they could not have reached the conclusions they stated. The wife denies all improper conduct, but several witnesses testify, not only to indiscretions on her part, but also to rather general public and condemnatory comment in the community, respecting her attitude toward and relations with a certain man, but there is no proof of criminal conduct on her part. There is enough in this to cast some doubt upon her motive for institution of the lunacy proceeding and also upon her testimony. If her motive is not personal safety, but relaxation of the marital state and freedom from interference with pursuit of pleasures restricted or embarrassed by that relation, or even to free herself from groundless accusations of scandal and vindicate her character and reputation, she may have greatly exaggerated and misinterpreted conduct on his part induced either by her wrongful acts or impressions made upon his mind by rumors or representations of impropriety on her part. Sane distress and mortification on his part may have been represented to be hysteria or mania, and his disciplinary measures adopted in distress, mortification and anger may have had abnormal aspects not indicative of insanity. Concealment of delusions is no doubt characteristic of paranoiacs, but it is ordinarily effected by unsuspected persons. Schutte rested under the charge of insanity from January 15, 1920, until the taking of the testimony in this case, late in April, 1920, a period of about three months, within which neighbors and friends, including physicians saw him and conversed with him frequently, observing his conduct, conversation, demeanor and expression, with knowledge of the charge against him and with reference thereto, all of whom swear positively that they discovered nothing indicating insanity in the slightest degree. They say that so far as they are able to see or determine, he is the same man he had always been in their earlier acquaintance and association with him. Their inability to discover any mental defect or abnormality in him, while observing him with reference to the charge and in efforts

86 W. Va.

to determine the state of his mind, in an informal way, is a circumstance tending to overthrow the theory of the expert wit-nesses and cast doubt upon the interpretation placed upon his previous conduct by the lay witnesses. It is highly improbable that an insane man can completely conceal his insanity from an intelligent and deliberate search for evidence of it by numerous persons. Besides, Schutte was under only technical restraint, during most, if not all, of the period of time intervening between his commitment and the date of this trial, and there is not the slightest evidence of any attempt on his part to molest or harm his wife or any other person by acts of violence. While the evidence is not clear as to his actual status, he seems to have been going about as he pleased. He went unaccompanied to a sanitarium or asylum near Baltimore, Maryland, for examination and observation by experts in mental diseases, where he remained for two weeks, and then returned having been discharged as a man of sound mind. His omission of any effort to reach the subjects of his alleged delusion and directly annoy, molest or harm them, within this considerable period, argues against the existence of the delusions consituting the basis of the theory of insanity. If he has an uncontrolable impulse or inclination to spite, annoy, humiliate or harm his wife, it is highly probable that there would have been some manifestation of it in some way, within that period.

The doubt as to his sanity thus revealed, must be resolved in his favor. *Lawrence* v. *Barlow,* 77 W. Va. 289; *Leatherman* v. *Leatherman,* 82 W. Va. 748. An adjudication of insanity immediately and directly works a restraint upon liberty. It raises a presumption of incapacity to make contracts, which hampers and restrains the person so adjudged. Being unable to transact business as a normal man, his estate is charged with the expenses and hazards of committee management and is deprived of the benefit of his own business judgment, ability and management. Deprived of the opportunity to enlarge his estate by his industry and capacity, he and those dependent upon him reduce it by their living and other expenses. But, aside from all this, liberty, full and complete liberty, is a right of the very highest nature. It stands next in order to life itself. The constitution guarantees and safeguards it. An

adjudication of insanity is a partial deprivation of it. Hence, every reasonable doubt as to the sanity of a citizen must be resolved in his favor. If it shall be hereafter shown at any time that Schutte is insane, he may be recommitted.

The judgment complained of will be reversed and the petitioner discharged from custody.

*Reversed, and petitioner discharged.*