STATE *ex rel.* SELINA NUTTER AND NANCY NUTTER

v.

RUTH MACE

(No. 9996)

Submitted October 7, 1947. Decided November 4, 1947.

*A. G. Mathews,* for relators.

*Donald F. Black,* and *Wm. S. Ryan,* for respondent.

Lovins, Judge:

On the petition of Nancy Nutter and Selina Nutter this Court awarded a write of *habeas corpus ad subjiciendum* directed to Ruth Mace, who, on August 21, 1947, had been appointed committee for petitioners by the County Court of Wood County, West Virginia.

Petitioners are sisters, aged eighty-one and seventy-nine years, respectively, and resided on a farm jointly owned by them, situated in an isolated section of Roane County, West Virginia. Their residence is located approximately three-fourths of a mile from a public road, and is without modern conveniences relative to heating, lighting, water and toilet facilities.

Nancy Nutter is suffering from arthritis deformans. At the time she was taken to Wood County she was suffering from a vitamin deficiency or malnutrition, and is usually confined to her bed, though on occasions she uses a wheel chair. Selina Nutter is afflicted with arthritis, has suffered a fracture of one of her lower limbs, is lame and uses a cane, but she is partially able to attend to her personal needs.

A brother and sister, aged seventy-four and sixty-six years, respectively, reside near petitioners and are their closest relatives. There are also a number of nephews, nieces, cousins and other relatives by marriage residing in Roane and Wood Counties.

In the month of July, 1947, petitioners directed an attorney to prepare a deed conveying their land to the son and daughter of one of their nephews and to prepare a will by which each of them bequeathed their personal property to the same persons. The proposed grantees and legatees, as a consideration for the conveyance and as an

inducement for making the will, were to support, maintain and care for petitioners for the remainder of their lives.

Under date of July 16, 1947, the brother and sister of petitioners notified them that, on August 5, 1947, they would move the County Court of Roane County to appoint a committee for petitioners. Thereafter the attorney who was to prepare the deed and wills, in company with a physician, visited petitioners at their home on·August 1, 1947. Shortly thereafter the brother, sister, and respondent herein induced petitioners to go to Spencer, the county seat of Roane County, where they remained for a short time in a hospital. They left the hospital in Spencer and went to Wood County. The exact time of their arrival in Wood County is not shown, but it is clear that they arrived on or about August 10, 1947. Upon their arrival they were taken to Vienna, in Wood County, where they were placed in the "Marshall Rest Home." The evidence is in conflict whether petitioners willingly left Roane County and went to Wood County or whether they went contrary to their wishes. However, it is clear that if petitioners went to Wood County willingly, they did so with the understanding that they were going there for the purpose of consulting a physician in whom they had great confidence.

While they were in the rest home a person was sent by one of their cousins to remove them therefrom to their home in Roane County, but that effort was unsuccessful. Shortly after that attempt, a notice was served on petitioners by Ruth Mace, the respondent herein, that on the 21st day of August, 1947, at ten o'clock a.m., the said Ruth Mace would move the County Court of Wood County to appoint her as committee for petitioners. The notice was served on petitioners in person on August 16, 1947, according to the return of service signed and sworn to by Ruth Mace.

The County Court of Wood County, being in regular session on the return day of the notice, entertained a

motion by the brother and sister of petitioners to appoint a committee for them. No objection being made, and petitioners making no appearance, the motion was sustained, and Ruth Mace was appointed their committee. Ruth Mace entered into a bond in the penalty of five thousand dollars, and appraisers were appointed, who appraised the property of petitioners in Wood County and in Roane County. On September 8, 1947, the report of the appraisers was made, from which it appears that Selina Nutter is the owner of real and personal property in the amount of $16,783.58 and Nancy Nutter is the owner of real and personal property amounting to $4,509.46.

The next step in the proceeding before the County Court of Wood County occurred on September 9, 1947, at a regular session of said court held on that day. The petitioners having theretofore given notice of their intention so to do, appeared by counsel and moved the court to set aside the order of appointment entered on August 21 and to declare the appointment of respondent void on the grounds: (1) That petitioners are residents of Roane County and have no property or residence in Wood County; (2) that petitioners were surreptitiously taken from Roane County to Wood County against their will; (3) that their counsel had been denied the opportunity of consulting petitioners since they had been placed in the Marshall Rest Home; and (4) that the order of August 21, 1947, showed no finding of mental incompetency. On the hearing of the motion counsel for respondent and petitioners stipulated that petitioners were born in Roane County; had lived therein all their lives until taken to the "Marshall Rest Home" on or about August 10, 1947; and that the order entered on August 21, 1947, should be amended to show that the County Court of Wood County, prior to the appointment of the committee, had affirmatively found that petitioners were incompetent. Upon consideration of said motion, it was overruled.

On motion of counsel for respondent, made on September 10, 1947, the bond of five thousand dollars theretofore given by respondent was increased to twenty-five thou-

sand dollars. Thereafter petitioners were granted a writ of *habeas corpus ad subjiciendum* by this Court, as hereinabove stated.

In this proceeding the first question to be discussed and determined relates to the application and effect of a writ of *habeas corpus*. If confinement or restraint of the petitioners is imposed by virtue of an order, finding or judgment, made or entered by a court having competent jurisdiction of the subject matter in general, valid on its face, although voidable or erroneous, a person so confined or restrained will not be discharged therefrom by a writ of *habeas corpus*. But the writ may be used if the process or proceeding is void. *Ex Parte Evans*, 42 W. Va. 242, 24 S. E. 888; see *State* v. *Plants*, 25 W. Va. 119; *Ex Parte Mooney*, 26 W. Va. 36; *Ex Parte Page*, 77 W. Va. 467, 87 S. E. 849; *Ex Parte Veltri*, 83 W. Va. 226, 98 S. E. 146; *Ex Parte Hickey*, 93 W. Va. 411, 116 S. E. 765; *Ex Parte Kirby*, 100 W. Va. 70, 77, 130 S. E. 86; *Shad* v. *McNinch*, 103 W. Va. 44, 136 S. E. 865; *Browsky* v. *Perdue*, 105 W. Va. 527, 143 S. E. 304; *Slater* v. *Melton*, 119 W. Va. 259, 193 S. E. 185.

It may be said that there are apparent exceptions to the foregoing rule as shown by some of the opinions of this Court. See *Schutte* v. *Schutte*, 86 W. Va. 701, 104 S. E. 108; *Ex Parte Samuel and Slivoo*, 82 W. Va. 486, 96 S. E. 95; and *Wright* v. *Wright*, 78 W. Va. 57, 88 S. E. 606. In the *Schutte* case this Court discharged a petitioner from restraint occasioned by a finding of a lunacy commission. In *Wright* v. *Wright, supra,* the petitioner was discharged from restraint caused by the finding of a justice of the peace upon an inquisition of lunacy. In *Ex Parte Samuel and Slivoo, supra,* this Court discharged petitioners on the ground that no competent evidence was introduced in a preliminary hearing on a criminal charge. It appears that this Court acted in the *Samuel and Slivoo* and in the *Wright* cases on the theory that the justices of the peace making the findings which caused the restraints complained of were not "courts of competent jurisdiction," as defined in the case of *Ex Parte Evans, supra,* and others cited above. In other words, this Court considered the

findings of the justices of the peace in those cases only as *prima facie* evidence. In this respect the *Samuel and Slivoo* case and the *Wright* case are to be distinguished. In the *Schutte* case the finding of the lunacy commission may also be considered as *prima facie* evidence only.

However, the decision of this Court in the case of *Sutherland* v. *Workman,* 119 W. Va. 683, 195 S. E. 856, wherein petitioner was imprisoned by a circuit court for contempt, is contrary to the general rule above stated. The principle was not adverted to and the case is not distinguishable from the cases enunciating the rule.

In the instant case petitioners are confined in the rest home under the direction of respondent, who, in her return to the writ, pleads her appointment as committee for petitioners. If the respondent was legally appointed committee for petitioners, she is entitled to the custody and control of the persons of petitioners, they not being confined in a jail or hospital. Code, 27-9-4. The return aforesaid necessitates a discussion of the jurisdiction of the County Court of Wood County.

Section 24, Article VIII of the Constitution of this State confers on county courts jurisdiction to appoint committees for insane persons. Legislative enactments, made pursuant to the constitutional provision, likewise confer jurisdiction on county courts to appoint committees. Code, 7-1-3. Another statute, more specific than the general authority contained in Code, 7-1-3, imposes upon county courts the duty to appoint a committee for a person who has been found to be insane or a mental defective by any court or by the mental hygiene commission, or, if a person is committed to a state hospital for the insane by the county court. Code, 27-9-1.

Code, 27-3, creates a mental hygiene commission for each county of this State, and confers on such commission the right to pass on the sanity of persons brought before it in accordance with the procedure outlined therein. Under Code, 27-3-3, a circuit court is authorized to pass on the sanity of a person brought before it in the absence

of a finding by the mental hygiene commission. By clear inference a county court, under Code, 27-9-1, may likewise pass on the sanity of a person. But it is to be noted that the lunacy commission's jurisdiction is limited by the terms of the statute to residents of the county; and the circuit court's authority is limited to an "inhabitant" of the county. No such limitation is found relative to a county court's jurisdiction.

We are mindful that, in discussing the question of jurisdiction of the county court in the case of *Evans* v. *Johnson,* 39 W. Va. 299, 305, 19 S. E. 623, this Court characterized a county court as having limited jurisdiction and as not being a court of record. But in later cases this Court has held that in the appointment of a committee for a person *non compos mentis,* made in regular session, county courts have general or unlimited jurisdiction and exercise judicial powers, and an appointment of a committee, so made, cannot be attacked collaterally. *Doak, Admr.* v. *Smith,* 93 W. Va. 133, 116 S. E. 691. See *Boone* v. *Boone,* 123 W. Va. 696, 703, 17 S. E. 2d 790. It may be said that the jurisdiction of the County Court of Wood County does not affirmatively appear. But, having general jurisdiction and exercising judicial powers conferred by the Constitution of this State in the appointment of committees, the jurisdiction of county courts in that respect will be presumed.

It is true that a stipulation of counsel shows that petitioners were not residents of Wood County, and it is a reasonable assumption that they had no property therein. An examination of the order entered by the County Court of Wood County shows that notice was given to petitioners of the appointment of respondent as their committee. We must assume from the face of the record that jurisdiction existed, although it may be observed that further examination of the record on writ of error may establish that the action of the County Court of Wood County was erroneous and may be voidable.

In the case of *Colley* v. *Calhoun,* 89 W. Va. 399, 109 S. E.

484, a resident of McDowell County went to Bluefield, in Mercer County, for the purpose of being treated in a hospital. While in Mercer County he died, and thereupon the County Court of Mercer County appointed an administrator. The administrator instituted a suit for the purpose of collecting a debt due his decedent, but the authority of the administrator was challenged on the ground that it was an improper appointment. On that state of facts this Court held: "An appointment of an administrator in a county in which the intestate left no estate and did not reside at the time of his death, is not void and cannot be collaterally attacked. Although voidable, it is treated as valid and allowed full operation, until vacated or otherwise abrogated." In the instant case the petitioners are residents of Roane County and went to Wood County for the purpose of receiving medical attention. In that respect the analogy between the instant case and the *Colley* case is clear. The statute relative to jurisdictional authority of county courts to appoint administrators of the estates of deceased persons is specific. Code, 44-1-4, and Code, 41-5-4. But the statute concerning the appointment of a committee does not specifically designate any particular county court as having jurisdiction to make such appointments. The difference in statutory provisions concerning the appointment of administrators and committees is a stronger reason for holding the appointment of the committee, here considered, as valid until properly challenged by appellate process.

Petitioners made no appearance before the County Court of Wood County and apparently no testimony was introduced. It seems that the county court made its finding of incompetence on the *ex parte* statement of one physician and it could be said, with some reason, that the finding of incompetency so made is voidable. But the absence of a finding of incompetency does not render the appointment of a committee void, such finding not being a prerequisite to the appointment of a committee by the county court. *Doak, Admr.* v. *Smith, supra,* and *Moore* v. *Coleman,* 126 W. Va. 815, 819, 30 S. E. 2d 333.

We conclude that the appointment of respondent as committee cannot be attacked collaterally by a proceeding in *habeas corpus* and that the same is effective until properly challenged by a writ of error or other appellate process. Since respondent is serving as a committee under an appointment which may be voidable, though not so declared, she has a right to the custody of petitioners by virtue of such appointment, and we remand the petitioners to her custody.

We take this opportunity to say that the action of respondent relative to taking the petitioners to Vienna, in Wood County, among strangers and away from their home where they have resided for most, if not all, of their lives, is not to be commended. It is frequently observed that old persons taken to strange places, to live among strangers, suffer more damage than if they were allowed to remain among familiar scenes and to associate with old friends.

In accordance with the foregoing the writ is dismissed and the petitioners are remanded to the custody of respondent.

> *Writ dismissed; petitioners remanded.*

Fox, PRESIDENT, dissenting:

I cannot concur in the decision of the majority in this proceeding. I do not believe that the privileges secured to individuals under the ancient and time-honored writ of *habeas corpus* should be so lightly disposed of, and especially on grounds which do not go to the merits of the case, with the result that two helpless old women are deprived of their freedom, through an order of a court which, in my judgment, acted without jurisdiction, and which order was absolutely void.

The writ of *habeas corpus* is a very ancient writ, its origin obscure, and said to be lost in antiquity. We know that in the very early history of the Anglo-Saxon race in England, and very soon after Magna Charta, the writ was

originated, for the purpose of securing the freedom of individuals against illegal or arbitrary power. It became a part of the common law of England, and, in 1679, as declaratory of the common law, the *Habeas Corpus* Act was enacted. It was transplanted on the shores of America, and became a part of our common law. The *Habeas Corpus* Act of 1679, and the decisions of the English courts have been accepted by the courts of this country as guides in the use of the writ. *McNally* v. *Hill, Warden,* 293 U. S. 131. So firmly established did it become, that when the Constitution of the United States was adopted, it did not appear to be necessary to use any language expressly recognizing the writ, but there was a provision therein which reads: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." When we came to the forming of the Constitution of West Virginia, it was provided by Section 4, Article III thereof that: "The privilege of the writ of habeas corpus shall not be suspended." Thus we have the writ so firmly established in our law that it cannot be repealed or suspended by our State Legislature, and only suspended in special instances by the Federal Government. The decisions of our courts have uniformly upheld the writ in all its force and power. It has stood out as the only writ to which all men may resort, where their individual rights are encroached upon by the illegal deprivation of their freedom. It has been said: "Habeas corpus acts should receive a liberal construction, in disregard, if need be, of the technical language used, and should always be construed in favor of the liberty of the citizen." 25 Am. Jur., 148. For a general discussion of the origin and history of the writ of *habeas corpus,* see 25 Am. Jur. 143; I Cooley's Constitutional Limitations, 8th ed. 709. "By immemorial tradition the aim of *habeas corpus* is a justice that is swift and summary." *McCanliss* v. *McCanliss* (N. Y.), 175 N. E. 129, 82 A. L. R. 1141; *Buchanan* v. *Buchanan* (Va.), 197 S. E. 426, 116 A. L. R. 688.

In my opinion, the question which must determine the

decision in this case is whether the County Court of Wood County had jurisdiction to appoint respondent as committee for the petitioners. There is, in my judgment, no question involved as to whether the order of that court was void or voidable. If the court did not have the jurisdiction contended for, its order was void, and can be attacked in any proceeding. So far as I know, no one seriously contends that the County Court of Wood County had jurisdiction to make the appointment now under attack. Certainly, the majority opinion does not so hold. It only holds that what that court did was voidable, and could be attacked only by some appellate process, or other proceeding which could be termed a direct attack.

This calls for consideration of the jurisdiction of county courts. Section 22 of Article VIII of our Constitution provides: "There shall be in each county of the State a county court, composed of three commissioners, and two of said commissioners shall be a quorum for the transaction of business * * *." Section 24 of the same Article provides with respect to the powers of county courts that: "* * * they shall have jurisdiction in all matters of probate, the appointment and qualification of personal representatives, guardians, committees, curators, and the settlement of their accounts, and in all matters relating to apprentices. * * *." Code, 27-9-1, provides: "When a person is found insane or to be a mental defective by any court or by the county mental hygiene commission, or is committed to a state hospital by the county court, the county court shall appoint a committee for him." The power to appoint a committee is, of course, vested in county courts under the Constitution, and it is a power of which they cannot be deprived. *Doak, Admr.* v. *Smith*, 93 W. Va. 133, 116 S. E. 691.

The question arises as to whether a county court is a court of general jurisdiction, so far as it exercises the powers relating to the appointment and qualification of personal representatives, guardians, committees and curators. This Court has not been entirely consistent on this proposition, but has finally settled upon the holding

in *Boone* v. *Boone,* 123 W. Va. 696, 17 S. E. 2d 790, in which it is held: "County courts are of limited jurisdiction in the sense that their powers are prescribed by Section 24, Article VIII, West Virginia Constitution, but in all matters of probate, the appointment of the fiduciaries.named in said Section 24, and the settlement of their accounts, they are courts of record, vested with judicial powers and unlimited in their jurisdiction where, in regular session, jurisdiction of both subject matter and parties is had." See *Starcher* v. *South Penn Oil Co.,* 81 W. Va. 587, 95 S. E. 28; *Doak, Admr.* v. *Smith, supra.* These holdings are important, because of the well-known rule that, ordinarily, jurisdiction will be presumed as to courts having general jurisdiction, and in the case at bar the holding of the majority opinion is based upon the presumption that the County Court of Wood County, being a court of general jurisdiction, with respect to the appointment of personal representatives, committees, etc., its jurisdiction to make the appointment under attack in this case can be presumed. This might be true if there were no facts in the case affecting the question of jurisdiction, beyond all question of doubt, that the County Court of Wood County made an appointment of a committee for two residents of Roane County, and, therefore, did not have jurisdiction of either the subject matter, or of the parties, and was wholly without power to act. When facts are shown in any case, all presumptions relating to any question affected by such facts, disappear. Why rely on presumption when facts are present? Why ignore facts and resort to presumption?

In this connection, it may be well to state that the presence of the petitioners in Wood County, however brought about, cannot be relied upon to support the proposition that they voluntarily became residents and citizens of that county. If they went there of their own volition, and had the capacity to make decisions as to the change of residence involved, they were not mental incompetents, and therefore the County Court of Wood County had no right to appoint the committee, although that act may only be

error; if, on the other hand, they were incompetent, they did not possess the necessary mental powers to make the determination necessary for a change of residence.

In my opinion, a county court has no jurisdiction to determine the personal rights of individuals residing in another county. Fundamentally, the jurisdiction of a county court cannot extend beyond the boundaries of the county in which it is elected. Our whole system of local self-government is based upon the idea that the power and jurisdiction of officers, elected by the people to administer laws, including judges and county courts, do not extend beyond the boundaries of the county or district in which they were elected, unless by special statutory provision. This principle runs through our laws and applies to offices, such as justices of the peace, members of boards of education, as well as to county courts and circuit courts. Processes of circuit courts run throughout the State, but even a circuit court cannot pass upon the rights of an individual residing in another circuit. *Click* v. *Click,* 98 W. Va. 419, 127 S. E. 194.

But it is said that the statute does not expressly limit a county court in the appointment of committees, and on this slender cord it is argued that a county court may appoint a committee for any person who happens to reside temporarily in its county; and that is what was done in the case at bar. If this argument is to prevail, there is nothing to prevent a county court in any county, wherein is located one of our hospitals for the insane or the feeble minded, from exercising, at will, the power to appoint committees for inmates. The statute, authorizing the appointment of a committee by a county court, does not require that notice be given the person for whom a committee is sought, and yet in *Lance* v. *McCoy,* 34 W. Va. 416, 12 S. E. 728, and in *Evans* v. *Johnson,* 39 W. Va. 299, 19 S. E. 623, in opinions prepared by Judge Brannon, it was held that there can be no appointment of a committee without notice to the person for whom a committee is sought. To my mind it is just as justifiable and important to hold that a citizen of a county is entitled to be judged, as to his per-

son and his property, by the instrumentalities set up for that purpose in his own county. The fact that our statute does not expressly provide that a county court cannot appoint a committee for a person, not a resident of the county, as is the case with the appointment of executors and administrators, is of no consequence. On this question I think the general principle should prevail, that no county court should ever be permitted to exercise any authority over the person or affairs of a resident of another county, except, of course, in those cases where the resident of another county owns property located in a county other than his residence, which might be affected by some action of its county court.

If the County Court of Wood County was without jurisdiction to make the appointment of the respondent as committee for petitioners, then its action was void. The case of *Ex Parte Mooney,* 26 W. Va. 37, is perhaps the leading case on *habeas corpus* in West Virginia. In that case it is held: "When a party is imprisoned under a judgment or order of a court having jurisdiction to make such order, he cannot be discharged on *habeas corpus,* however erroneous such judgment or order may be; but it is otherwise if the court had no jurisdiction to make the order or judgment." Thus, in plain and simple language, it is stated, in effect, that if a court has no jurisdiction to make the order or judgment, a petitioner may be discharged from its intended effect on *habeas corpus.* This opinion was written by Judge Snyder, whose reputation for ability and clarity of expression is not excelled by any man who has ever occupied a seat on this Court. The same principle is followed in *Ex Parte Evans,* 42 W. Va. 242, 24 S. E. 888, in which it is held: "The remedy for mere irregularity in the process or mere error in the proceedings of courts of competent jurisdiction is by appeal or writ of error, not by *habeas corpus;* otherwise if the process or proceedings be void." These cases have never been overruled, and I do not think they will now be questioned.

In the course of years, the writ of *habeas corpus* has been somewhat liberalized, and has been frequently re-

sorted to in situations respecting the custody of children, and it has always applied to cases where persons are held in confinement under an order of some court or other tribunal. It is undoubtedly true that in cases where a court or other tribunal has jurisdiction to impose imprisonment, or to decree custody of children, or otherwise applies to people under restraint, they cannot secure their release under writ of *habeas corpus,* but must resort to the remedies open to them under the law. A person convicted of crime in one of our courts, having jurisdiction of a case, must prosecute an appeal. Where in a suit for divorce, or otherwise, the custody of children is committed to one person, there can be no resort to writ of *habeas corpus,* because the right of appeal is open. But, in all cases where this principle applies, the distinct foundation of the rule is that the court or other tribunal possessed jurisdiction to impose sentence or decree custody. To no case of which I have any knowledge, does this principle apply where, in the first instance, the court decreeing the restraint or custody was without jurisdiction to do so. In all such cases the writ of *habeas corpus* may be invoked.

That there can be no question that respondent relies on the order of the County Court of Wood County, as justifying the restraint of petitioners, we have only to refer to the record. Petition was filed on the part of the petitioners, by which respondent was required to come into court and justify their alleged detention. She did so by sole reliance on the order of the County Court of Wood County, appointing her as committee for the petitioners; and in the record, in the return, and by stipulation of the parties, it is admitted that the petitioners had been lifelong residents of Roane County until they had been brought to Wood County, a short time previous to respondent's appointment as committee. Respondent having made that defense to the writ, we are, in my judgment, called upon to determine whether the County Court of Wood County had jurisdiction to make such appointment, and we cannot escape that duty by raising the question as to whether the action of the county court was void or void-

able. That order either justified the custody of the petitioners, by respondent, or it was absolutely void. There can be no middle ground. Surely, when the respondent put in issue the jurisdictional question, we should base our decision on the legal and factual issue presented, and not on any presumption of jurisdiction.

The majority opinion is based, I think solely, on the case of *Colley* v. *Calhoun*, 89 W. Va. 399, 109 S. E. 484, where a resident of McDowell County went to a hospital in Bluefield, Mercer County, for treatment, and there died. An administrator was appointed for his estate in Mercer County, and when that administrator instituted an action at law to recover a debt due his decedent, the authority of the administrator to maintain the action was challenged, on the ground that his appointment was improper and illegal. This Court held that the appointment was not void, and therefore could not be the subject of a collateral attack. The decision in the *Colley* case is supported by a number of authorities cited therein, but an examination of those authorities will show that they all refer to cases involving the appointment of administrators or guardians, wherein there may be said to be presumption of jurisdiction, leading to the conclusion that on presumed jurisdiction its decision would not be void, but only voidable. I do not disagree with that holding, because it is apparently necessary in the prompt settlement of estates of decedents; but the distinction between cases of that type and cases in *habeas corpus*, which seems to have been lost sight of, is that those cases involved property of a decedent, or the estate of a ward; there was no question of personal liberty involved. *Habeas corpus* is a writ which provides prompt and speedy remedy intended to protect people in the freedom of their persons, and it is never concerned with property rights. Its use should never be made dependent on the tedious and delayed proceedings in other cases, or the processes of appeal or writ of error. Application for relief under the writ is informal, as this Court well knows, because we have frequently entertained petitions written by parties in prison without the

aid of counsel. Technical pleadings, and long delay should never be tolerated in *habeas corpus* proceedings. We should go to the heart of the matter, and promptly determine, once and for all whether a petitioner for such writ is being illegally deprived of his liberty. In this case there can be no reasonable excuse for refusing to pass on the sole issue presented, and that is whether the County Court of Wood County had jurisdiction to appoint respondent as committee for Selina Nutter and Nancy Nutter, the petitioners. I do not think it had that jurisdiction, and, therefore, I would release the petitioners from the illegal custody of the respondent.

I am authorized to state that Judge Riley concurs in this dissent.