MARTIN et al. v. WHITE.

(Circuit Court of Appeals, Ninth Circuit. June 20, 1906.)

No. 1,292.

1. COURT COMMISSIONERS—JURISDICTION—APPOINTMENT OF GUARDIAN.
The jurisdiction of a United States commissioner as ex officio probate judge to appoint guardians for insane and incompetent persons is wholly statutory, and in order to obtain such jurisdiction it must affirmatively appear that the essential provisions of the statute have been complied with.

2. COURTS—JURISDICTION—PROCEDURE.
Code Alaska, § 723, declaring that when jurisdiction is conferred on a court or judicial officer all the means to carry it into effect are also given, and in the exercise of the jurisdiction, if the course of proceeding be not specially pointed out by the Code, any suitable process or mode of proceeding may be adopted most conformable to the spirit of the Code, refers only to the regulation of proceedings had in courts after jurisdiction has been regularly acquired, and applies only where the course of proceedings is not specially provided.

3. GUARDIAN AND WARD—APPOINTMENT OF GUARDIAN—STATUTES.
Code Alaska, § 911, declares that when any person likely to be put under guardianship shall reside without the district, and shall have any estate therein, any friend or any one interested in his estate may apply to the commissioner of any precinct in which any such estate may be, and that a guardian may be appointed by the commissioner after notice. Section 912 declares that every guardian appointed under the provisions of the preceding section shall have the same powers and duties with respect to any estate of the ward that may be found within the district, etc., as are given to any other guardian duly appointed, etc. Held, that such sections were only applicable to guardians appointed for persons who reside without the district, having estates within the district where the proceedings are instituted.

4. INSANE PERSONS—APPOINTMENT OF GUARDIAN—STATUTES—PROCESS—SERVICE.
Code Alaska, § 896, declaring that when the relatives or friends of any insane person shall apply to have a guardian appointed for him, the commissioner shall cause notice to be given to the supposed insane person of the time and place of the hearing, etc., contemplates the personal service of such notice on the person affected thereby.

In Error to the District Court of the United States for the Third Division of the District of Alaska.

This is an action of ejectment brought by the plaintiff (defendant in error) Andrew White, by his guardian, H. M. Badger, against the defendants (plaintiffs in error) to recover possession of the premises described in the complaint, being two lots adjoining, end to end, comprising one plot of ground, together with improvements thereon. The complaint alleged that on May 9, 1905, H. M. Badger was duly appointed by the commissioner and ex officio probate judge of the Fairbanks Precinct, in the district of Alaska, as the guardian of the person and property of the said Andrew White, the said Andrew White having been found at the same time by the court to be an insane person, and owning real property in said precinct, and that said Andrew White occupied the same as his residence, and had been in possession at all times since, except as such possession has been interfered with by the unlawful conduct of the plaintiffs in error, and that he is now entitled to the possession of the property; that prior to the bringing of this action the plaintiffs in error wrongfully entered within the inclosure, and broke into the houses, and ousted him from the possession of the property, and have since retained the possession of the property. A demurrer was interposed to the complaint upon the ground that the plaintiff had no legal capacity to bring the suit, and that the complaint does not state facts sufficient to constitute a cause of action against the plaintiffs in error, or any of them. This demurrer was overruled, and the plaintiffs in error filed an answer denying any legal appointment of Badger as the guardian of said White, and denied the right of White to the possession of said real property. They further affirmatively answered that they were in the lawful and peaceable possession of the premises described in the complaint; that the petition for the appointment of Badger as guardian of White was insufficient to warrant his appointment as guardian; that no notice was given of the pendency of the proceedings of his appointment as guardian either to White or any other person; that without such notice the commissioner of Fairbanks Precinct, without authority of law, held a hearing in such proceedings, wherein it was disclosed that White was not a resident of Fairbanks Precinct, and the commissioner was without jurisdiction to entertain the application; that the said White never occupied the premises described, and had wholly abandoned the whole of said premises. Divers objections and exceptions were taken to certain rulings of the court as to the admission of evidence and instructions to the jury. The jury found a verdict in favor of the defendant in error, and upon that verdict judgment was rendered by the court. At the trial the proceedings had before the United States Commissioner were admitted in evidence, and it appears therefrom that on April 27, 1905, one John A. Long, a friend and acquaintance of Andrew White, presented a petition before said commissioner, showing the following state of facts: "(1) That prior to July, 1904, the said Andrew White came to Fairbanks, and became a permanent resident of the town, and in pursuance thereof took up lot No. 1, block No. 2 [the property and premises described in the complaint]; that the improvements put upon the said lot by said Andrew White were of the value of at least fifteen hundred dollars, and the said ground is now worth at least one thousand dollars. (2) That this petitioner in the year of 1904 owned a parcel of ground in the immediate neighborhood of the lot of the said White which he cultivated as a garden during the summer of that year, and in that way became personally acquainted with the said White, and somewhat with his business affairs, and especially with his mental peculiarities. (3) Your petitioner further shows that the said White was a skillful carpenter, and although there was plenty of work for carpenters at Fairbanks, complained that there was none, and expressed his purpose of building a boat, and going down the river to find work, which he did in the latter part of July, 1904, leaving his cabins locked up, with his extra clothing and household utensils therein (presumably, at least), leaving no one in charge of such property, or with any authority in connection therewith. That the said White has never communicated with any one in Fairbanks, as far as petitioner is aware, nor has any word come back from him, direct or indirect, except, perhaps, a vague rumor that he had been drowned at sea. That from petitioner's conversation and acquaintance with said White, from his actions, and from what could be learned of

him from others, petitioner is of the opinion that said White was insane when he left Fairbanks in July, 1904, and is in that condition of mind at this time." It is further alleged in this petition that since the disappearance of the said White the plaintiffs in error had taken possession of the property, and were occupying and making preparations to improve the same, and prayed "the court to order a hearing after such notice as may be deemed sufficient, and after such hearing that the court appoint some suitable person as guardian of the said Andrew White, if it finds that he be indeed insane, to the end that his property may be looked after and his interests conserved."

On reading the petition, the commissioner, on April 28, 1905, "ordered that May 9, 1905, at 10 o'clock a. m., be fixed as the time, and the courthouse in Fairbanks, as the place, for the hearing of said petition, and the said petitioner is ordered to give public notice of the time and place thereof by a notice published in the Fairbanks Semiweekly News once in its issue of April 29, 1905, and by posting a similar notice in three public places in the town of Fairbanks." On May 9, 1905, upon proof that such notice had been published and posted as directed by said order, it was "ordered, adjudged, and decreed that H. M. Badger be, and he is hereby, appointed guardian of the person and property of the said Andrew White to the extent as to property that the said Andrew White may own property in the Fairbanks recording district," and be required to give bonds.

The following provisions of the Code of Alaska have been cited by counsel, and are referred to in the opinion of the court.

Under the miscellaneous provisions respecting the courts and judicial officers, in chapter 71:

"Sec. 723. When jurisdiction is by any law of the United States conferred on a court or judicial officer, all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding be not specially pointed out by this Code, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

Under chapter 88 of "Guardians and Wards":

"Sec. 888. The commissioner for each precinct, when it shall appear to him necessary or convenient, may appoint guardians to minors and others being inhabitants or residents in such precinct, and also such as shall reside without the district and have any estate within the same."

"Sec. 895. Commissioners in their respective precincts shall have power to appoint guardians to take care, custody, and management of the estates, real and personal, of all insane persons, idiots, and all who are incapable of conducting their own affairs, and the maintenance of their families and the education of their children.

"Sec. 896. When the relatives or friends of any insane person, or any other persons inhabitants of the precinct in which such insane person resides, shall apply to the commissioner by petition in writing to have a guardian appointed for him, the commissioner shall cause notice to be given to the supposed insane person of the time and place appointed for hearing the case, not less than ten days before the time so appointed; and if, after a full hearing, it shall appear to the commissioner that the person in question is incapable of taking care of himself, the commissioner shall appoint a guardian of his person and estate, with the powers and duties hereinafter specified."

"Sec. 911. When any minor or other person likely to be put under guardianship according to the provisions of this chapter shall reside without the district and shall have any estate therein, any friend of such person, or any one interested in his estate, in expectancy or otherwise, may apply to the commissioner of any precinct in which there may be any estate of such absent person, and after notice to all persons interested, to be given in such manner as the commissioner shall order, and after a full hearing and examination, if it shall appear proper the commissioner may appoint a guardian for such absent person.

"Sec. 912. Every guardian appointed according to the provisions of the preceding section shall have the same powers and duties with respect to

any estate of the ward that may be found within the district, and also with respect to the person of the ward if he shall come to reside therein, as are prescribed to any other guardian appointed by force of this chapter."

Morton E. Stevens, Claypool, Kellum & Cowles (Edward E. Cushman, of counsel), for plaintiffs in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge (after making the foregoing statement, delivered the opinion of the court).

Under the foregoing state of facts, did the commissioner have any jurisdiction to make an order appointing Badger guardian of said White? Did the court have any jurisdiction to hear and determine the case? The jurisdiction of the commissioner as ex officio probate judge to appoint guardians for insane and incompetent persons is derived from the statute, and in order to obtain such jurisdiction it must affirmatively appear that the essential provisions of the statute were complied with. The court below upon the trial of this action proceeded on the ground that the statutes had been complied with in all essential particulars, and that the judgment of the commissioner adjudging White to be insane and appointing Badger as his guardian is conclusive, and cannot be collaterally attacked. That the commissioner had jurisdiction over the subject-matter of the petition of Long is unquestioned. Did he have jurisdiction over the person of White or his property? It is manifest that section 723 of the Alaska Code refers only to the regulation of proceedings had in the courts after jurisdiction has been regularly acquired, and applies only where the course of proceedings is not specially pointed out in the Code. Section 888 simply provides for the appointment of guardians of minors and other persons, either residents or nonresidents, who may have property within the district where the proceedings are instituted, but does not attempt to designate the course of procedure in such cases; that is provided for in other sections. The provisions of sections 911 and 912 apply only to the appointment of guardians for persons who reside without the district, having estates within the district where the proceedings are instituted.

From a careful examination of the various sections of the Code of Alaska, it plainly appears that the validity of the proceedings had in the present case before the commissioner must be determined by the provisions of sections 895 and 896. The commissioner proceeded upon the theory that White was a resident of Fairbanks Precinct, and the District Court, in its opinion overruling the demurrer, said: "Upon the face of the probate record, it is my judgment that White was a legal resident of Fairbanks Precinct when these proceedings were begun, and that the court had jurisdiction to enter the judgment," and further held that the proceedings were regular, and upon their face show "that the probate court had jurisdiction." The mere fact that the commissioner had jurisdiction in such cases to receive and act upon the petition does not by any means establish the proposition that he acted, after receiving the petition, in compliance with

the provisions of the statute, and this is the principal question to be determined by this court.

A commissioner's court is one of limited jurisdiction, and compliance with the requirements of the law must be fully shown. It is undoubtedly true, as claimed by the defendant in error in the court below, that when jurisdiction is established, all presumptions of law and fact are in favor of the judgment. No authorities need be cited on this well-settled proposition. But the point here is, was the jurisdiction of the court established?

Without stopping to criticise the peculiar statments set forth in the petition of Long, and conceding, for the purpose of this opinion, that, defective as it is in almost every essential particular, it was sufficient to authorize the commissioner to proceed according to law to give notice to White of the pendency of the proceedings, and of the time and place when a hearing would be had thereon, was any such notice given? The suggestion is made on behalf of the defendant in error that section 896 does not provide what steps shall be taken to serve the notice on the person supposed or believed by the petitioner to be insane. The statute must receive a sensible construction. The statute says that "the commissioner shall cause notice to be given to the supposed insane person of the time and place appointed for hearing the case." If White, the alleged insane or incompetent person, resided in Fairbanks Precinct, does not this language mean that the notice should be personally served upon the individual to be affected thereby? The language of section 896 is not susceptible of any other construction. There was no notice given to White in compliance with the provisions of the statute under which the commissioner acted. The "public notice" of the time and place of the hearing in a newspaper, or by posting a similar notice in three public places in the town of Fairbanks, was not such a notice as the statute requires. White did not appear at the hearing. The proceedings then had were ex parte, without authority of law, and void. Chase v. Hathaway, 14 Mass. 222; Eddy v. Eddy, 15 Ill. 386; Smith v. Burlingame, 4 Mason, 121, Fed. Cas. No. 13,017; North v. Joslin, 59 Mich. 624, 626, 26 N. W. 810; Evans v. Johnson, 39 W. Va. 299, 19 S. E. 623, 23 L. R. A. 737, 45 Am. St. Rep. 912; Hunt v. Searcy, 167 Mo. 158, 67 S. W. 206; Stewart v. Taylor (Ky.) 63 S. W. 783; Martin v. Motsinger, 130 Ind. 555, 558, 30 N. E. 523; Woerner, Am. Law of Guardianship, pp. 392, 393, 445.

In Smith v. Burlingame, supra, which was a proceeding under a statute which authorized the courts of probate "to appoint guardians of all persons who are delirious, * * * or who, for want of discretion in managing their estates, are likely to bring themselves and families to want and misery," one Cady was appointed guardian by the court of probate, but no notice was given to the plaintiff previous to such appointment, and the objection was made that the want of notice was fatal. Story, Circuit Justice, said:

"My opinion is that the objection is fatal. The courts of probate have no right to put a person under guardianship, as unfit to manage her affairs, without notice to the party and an adjudication on the facts; and until such

146 F.—30

adjudication no letters of guardianship can legally be issued. The case of Chase v. Hathaway, 14 Mass. 222, is directly in point, and with that case I entirely concur."

In Evans v. Johnson, supra, the court elaborately discussed the question as to the necessity of giving notice to the alleged insane person, and other questions applicable to the present case, and upon all the points cited numerous authorities. In answering the suggestion made that the notice to an insane man will do him no good, the court said:

"The reply is that his insanity is the very question to be tried, and he the only party interested in the issue. In many cases, if notice be given him, he will be prompt to attend, and in person be the unanswerable witness of his sanity."

The court further said:

"Even though the statute be silent regarding notice, * * * yet the common law steps in and requires it. * * * A statute will not be construed to authorize proceedings affecting a man's person or property without notice. It does not dispense with notice. * * * If the case were one of mere error or irregularity, it might be said that the order was good against collateral attack, and must be reversed by a direct proceeding; but the question is one of jurisdiction—a want of authority to make the order for want of jurisdiction over the person to be affected. * * * A sentence of the court without hearing the party, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to any respect in any other tribunal. Jurisdiction is indispensable to the validity of all judicial proceedings. Jurisdiction of the person as well as the subject-matter are prerequisites, and must exist, before a court can render a valid judgment or decree; and if either of these is wanting, all the proceedings are void. * * * The county court being a court of limited jurisdiction, it must appear, not only that it had jurisdiction as to the subject-matter, but also over the person by service of process or notice. * * * When we say there must be jurisdiction, we mean both that the matter and the person to be affected must be within the jurisdiction of the court by service of notice upon him."

In Stewart v. Taylor, supra, the court said:

"Although the statute is silent upon the subject of notice, we cannot believe that the Legislature ever intended that one should be declared a lunatic, and have his property and person put in charge of another, without either being present in court, with an opportunity to defend the proceeding, or without having due notice thereof, and thus have an opportunity to appear and defend. Even if the Legislature had so intended, a judgment rendered in the proceeding would not be valid unless the defendant in the writ had been notified by process of the court of its pendency, or was present at the trial, with an opportunity to defend. To adjudge him to be of unsound mind without notice or his personal appearance at the trial would be to deprive him of important and valuable rights without being heard."

In Martin v. Motsinger, supra, the court said:

"While the statute does not in terms provide for notice, the proceedings are of such a character that they cannot be ex parte and be valid. If the statute was to be construed as authorizing proceedings of an ex parte character, it would be, to that extent, in conflict with the Constitution of the United States, and void."

Perhaps the most illustrative case bearing upon the injustice that may be done by a judicial proceeding without notice is that of Scott v. McNeal, 154 U. S. 34, 40, 48, 14 Sup. Ct. 1108, 38 L. Ed. 896.

This was a suit in ejectment. The facts showed that in March, 1881, the plaintiff mysteriously disappeared, and nothing was heard of him, and he was believed to be dead until July, 1891, when he returned. In 1888, on the presumption that he was dead, letters of administration were granted, and his estate was administered upon and the land in question sold. When he returned he sued the purchaser for the land. The courts of the state of Washington held that the proceedings in administration were conclusive—that he was dead—and directed a verdict for the defendant. The case was appealed to the Supreme Court of the United States, where the judgment below was reversed. Mr. Justice Gray, in delivering the opinion of the court, after citing the fourteenth article of amendment to the Constitution of the United States, said:

"These prohibitions extend to all acts of the state, whether through its legislative, its executive, or its judicial authorities. * * * No judgment of a court is due process of law if rendered without jurisdiction in the court or without notice to the party. The words 'due process of law,' when applied to judicial proceedings, as was said by Mr. Justice Field, speaking for this court, 'mean a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights. To give such proceedings any validity there must be a tribunal competent by its Constitution—that is, by the law of its creation—to pass upon the subject-matter of the suit; and, if that involves merely a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process within the state or his voluntary appearance.' Pennoyer v. Neff, 95 U. S. 714, 733, 24 L. Ed. 565."

See, also, Hamilton v. Brown, 161 U. S. 256, 267, 16 Sup. Ct. 585, 40 L. Ed. 691; New Orleans Water Works v. New Orleans, 164 U. S. 471, 480, 17 Sup. Ct. 161, 41 L. Ed. 518; Chicago, B. & Q. R. Co. v. Chicago, 166 U. S. 226, 234, 17 Sup. Ct. 581, 41 L. Ed. 978.

The judgment of the District Court is reversed, and the action dismissed, without prejudice.