

**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## IN THE MATTER OF THE GUARDIANSHIP OF YUK LAN MOYLAN,
Ward.

### RICHARD E. MOYLAN,
Appellant,

**v.**

### LINA LEIALOHA MOYLAN ALSTON,
Appellee.

Supreme Court Case No.: CVA19-022
Superior Court Case No.: SP0106-07
(consolidated with SP0104-07, SP0105-07,
SP0107-07, SP0110-07, SP0111-07)

## OPINION

## Cite as: 2021 Guam 15

Appeal from the Superior Court of Guam
Argued and submitted on January 28, 2021
Via Zoom video conference

**E-Received**
10/22/2021 9:48:06 AM

Appearing for Appellant:
Gary Wayne Francis Gumataotao, *Esq.*
Law Office of Gumataotao & Pole
456 W. O'Brien Dr., Ste. 104
Hagåtña, GU 96910


Douglas B. Moylan, *Esq.*
Skinner Plaza Bldg.
138 W. Seaton Blvd., Ste. 201
Hagåtña, GU 96910

Appearing for Appellee:
Jacqueline Taitano Terlaje, *Esq.*
Law Office of Jacqueline Taitano Terlaje, P.C.
284 W. Chalan Santo Papa
Hagåtña, GU 96910

BEFORE: F. PHILIP CARBULLIDO, Chief Justice; ROBERT J. TORRES, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**TORRES, J.:**

[1]     This case arises out of the same highly contested guardianship case we addressed in *In re Guardianships of Moylan*, 2011 Guam 16 ("*Moylan I*"); *In re Guardianship of Moylan*, 2017 Guam 28 ("*Moylan II*"); *In re Guardianship of Moylan*, 2018 Guam 8 ("*Moylan III*"); *In re Guardianship of Moylan*, 2018 Guam 15 ("*Moylan IV*"); and *In re Guardianship of Moylan*, 2018 Guam 21 ("*Moylan V*"). The Superior Court appointed Lina Leialoha Moylan Alston, daughter and guardian of Yuk Lan Moylan's person, as a limited guardian of Yuk Lan Moylan's estate. Richard Moylan, son of Yuk Lan Moylan, appeals this appointment. We affirm the trial court's findings about the notice, bond, and special guardian appointment, but remand for an appointment of a guardian for the rest of the estate.

## I. FACTUAL AND PROCEDURAL BACKGROUND

[2]     Yuk Lan Moylan ("Yuk Lan") and her late husband were successful businesspeople who amassed many valuable assets. In 2007, each was diagnosed with varying stages of Alzheimer's disease, which limited their ability to care for themselves and their assets. Mr. and Mrs. Moylan had four children: Richard Moylan, Kurt Moylan, Lina Leialoha Moylan Alston, and Francis Lester Moylan, Jr. Yuk Lan is 103 years old.

[3]     In preceding appeals, a judge appointed Kurt Moylan ("Kurt") as a limited, special guardian of the estate and Lina Leialoha Alston ("Leialoha") as the limited, special guardian of the person of Yuk Lan. Kurt resigned as the guardian of the estate, leaving no guardian of the estate itself and Leialoha as the limited guardian of Yuk Lan's person. Thus, there was no available signatory for the checking account used for the payment of Yuk Lan's expenses, and no

way to pay for necessities such as utilities, health care, insurance, and general caregiving. Leialoha paid for some of these expenses partly from her personal funds, and Yuk Lan has amassed $25,682.34 in expenses. Leialoha kept record of these expenses and provided the court a detailed report of the expenses.

[4]     On December 20, 2018, Leialoha petitioned to become a special guardian of Yuk Lan's estate, requesting access to specific accounts to pay certain financial obligations of Yuk Lan. This petition noted that it was a temporary request pending the appointment of a general guardian of the estate.

[5]     On May 3, 2019, Leialoha also filed a verified petition requesting appointment as general guardian of Yuk Lan's estate and another request for access to specific accounts to pay certain financial obligations of Yuk Lan. In this petition, Leialoha noted she "is prepared to post the necessary bond to serve as the General Guardian of the Estate of Yuk Lan Moylan." Record on Appeal ("RA"), tab 595C at 5 (V. Pet., May 3, 2019). Leialoha also requested a hearing every three weeks to determine the monthly payments to be made on Yuk Lan's behalf.

[6]     The verified petition included letters from Dr. Ismael, a psychiatrist at Guahan Behavioral Health Clinic, about Yuk Lan's medical condition. The letters detail the slow, deteriorating mental condition of Yuk Lan, her severely impaired memory, and her increasing need for "assistance and supervision with activities of daily living." RA, tab 595C at Ex. B (V. Pet.). A week later, during an *ex parte* hearing for orders pending a hearing, the court took judicial notice of Yuk Lan's medical condition. The court found the expenses detailed in the petition to be reasonable and appointed Leialoha a special limited guardian of Yuk Lan under its powers under 15 GCA § 3501. The temporary limited guardianship allowed Leialoha to pay the expenses outlined in the court-approved list of expenses. The court established that "upon

completion of satisfying these expenses using Mrs. Moylan's funds, the guardianship will be terminated." RA, tab 602C (Dec. & Order, May 10, 2019).

[7]     In another hearing a few days later, the Superior Court denied Leialoha's December 20, 2018 petition to become the special guardian of the estate on procedural grounds, as there was no evidence Yuk Lan received notice of the hearing.

[8]     Leialoha subsequently served Yuk Lan with the petition for general guardianship documents filed on May 3, 2019, including: the verified petition for appointment of general guardian, Leialoha's affidavit, special letters of guardianship, a declaration of counsel in support of the *ex parte* application, and another notice of hearing.

[9]     About a month later, the court authorized another temporary limited guardianship, allowing Leialoha to again pay Yuk Lan's monthly expenses. In this Decision and Order, the court noted that "a Petition for General Letters of Guardianship has been served on Mrs. Moylan as of May 29, 2019, and guardianship proceedings may shortly result in a guardian of the estate of Mrs. Moylan." RA, tab 616C (Dec. & Order, June 20, 2019).

[10]     On July 5, 2019, a notice of hearing was filed by the Clerk of the Superior Court. Douglas B. Moylan, attorney for the appellant Richard Moylan ("Richard"), was listed as a recipient of the notice. The notice includes the caption "Special Proceeding Case No.: SP0106-07," the same case number used on the December petition, the May petitions, the May decision and order, and the June decision and order. The notice of hearing states the following: the time of hearing as "9:00 a.m."; the date of hearing as "July 23, 2019"; the location of the hearing as "Guam Judicial Center, Hagåtña, Guam"; and the purpose of the hearing as "Guardianship." RA, tab 622C (Notice Hr'g, July 5, 2019). A "Declaration of Service" was filed on July 18, 2019, attesting to service of the notice on Yuk Lan.

**[11]**     During the hearing on the general guardianship, the court observed Yuk Lan.  The court noted that Yuk Lan "showed no indication that she was aware that the Court proceedings concerned her, or even that any Court proceedings were occurring at all."  RA, tab 647C at 7 (Finds. Fact & Concl. L., Sept. 27, 2019).  The court found Leialoha cared for Yuk Lan for over a decade, feeding, transporting, and making all necessary arrangements for her mother.  The court took judicial notice of the prior proceedings about Yuk Lan's competence and concluded that she is incompetent and in need of a guardian.

**[12]**     In a report of expenses filed by Leialoha, $369.66 was used to pay for Francis Moylan, Jr.'s medical and dental insurance.  This was not an authorized expense.  The court, however, found this expense was not enough to prove Leialoha unfit for guardianship.  Leialoha also used funds to unnecessarily pay property taxes on leased properties, properties whose rental agreements state the lessees themselves are responsible for the property taxes.  The court found the use of funds for these property taxes improper; however, it did not find payment of these taxes as sufficient evidence of Leialoha's unfitness for guardianship.

**[13]**     While Leialoha requested a general guardianship of the person and estate of Yuk Lan, the court found that Leialoha did not need unlimited access to the estate to care for Yuk Lan and her property.  The court appointed Leialoha as the limited guardian of Yuk Lan's estate.  The court granted Leialoha access to a single account, the ANZ Guardianship Account, which receives rental income from Yuk Lan's property leases, and one-time access to a Bank of Guam account to transfer $100,000.00 to the ANZ Guardianship Account.  The ANZ Guardianship Account had an estimated balance of $66,000, and annual rental income between $60,000 and $84,000 was to be deposited into that account.

**[14]**    The trial court found "[a] surety bond from an authorized surety company . . . in the amount of $250,000" from Leialoha would meet the requirements of 15 GCA § 4001.  RA, tab 647C at 12 (Finds. Fact & Concl. L.).

**[15]**    The court issued letters of guardianship appointing Leialoha the limited guardian of Yuk Lan's estate issued.  Richard timely appealed.

## II.  JURISDICTION

**[16]**    This court has jurisdiction over appeals from orders granting or revoking letters of guardianship.  48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 117-51 (2021)); 15 GCA § 4801 (2005); 7 GCA § 3107 (2005).

## III.  STANDARD OF REVIEW

**[17]**    We review jurisdictional questions *de novo*.  *Moylan V*, 2018 Guam 21 ¶ 7 (citing *People v. San Nicolas*, 2016 Guam 21 ¶ 9).  We review the appointment of a particular guardian for abuse of discretion.  *Id.* (citing *In re Guardianship of Ulloa*, 2014 Guam 32 ¶ 22).  "Questions regarding '[w]hether a bond is required to be posted by a guardian over a person' and the corresponding statutory calculations are issues of statutory construction reviewed *de novo*."  *Id.* (alteration in original) (quoting *Moylan I*, 2011 Guam 16 ¶ 13).

## IV.  ANALYSIS

### A.  Leialoha Properly Served Notice of the Guardianship Hearing on Yuk Lan

**[18]**    Richard argues Yuk Lan was not properly served notice of the July 23, 2019 guardianship hearing because the notice provided was deficient, thus robbing Yuk Lan of her due process protections.  Appellant's Br. at 9-12, 16 (Jan. 6, 2020).  We disagree.

**[19]**    Notice is a fundamental aspect of due process, and deficient notice to interested persons of an official proceeding violates their due process rights.  *Aflague v. Moylan ex rel. Estate of*

*Moylan*, 2020 Guam 18 ¶ 14. In a guardianship proceeding, deficient notice renders a decision void, as proper notice is a prerequisite for ensuring both the ward's due process rights and the court's jurisdiction. *See id.*; *Moylan V*, 2018 Guam 21 ¶ 13; *see also In re Dahnke's Estate & Guardianship*, 222 P. 381, 383 (Cal. Dist. Ct. App. 1923).

[20] Title 15 GCA § 3802 defines the procedural conditions for appointing a guardian over an incompetent ward. Section 3802 states that after filing a verified petition alleging a potential ward's incompetence, "the clerk shall set the same for hearing by the court and shall cause notice to be given to the alleged insane or incompetent person of the time and place of hearing, not less than five (5) days before the time so appointed; and such person, if able to attend, must be produced at the hearing . . . ." 15 GCA § 3802 (2005). The notice must, at least five days before the hearing date, inform the potential ward of the time and place of the hearing. *Id.*; *see also Moylan V*, 2018 Guam 21 ¶ 13 (holding that section 3802's five-day notice requirement must be strictly construed).

[21] "The Guam statutes governing guardianships were borrowed from sections of the California Probate Code prior to their amendment." *Moylan I*, 2011 Guam 16 ¶ 28. The relevant parts of California's Probate Code mirrored Guam's from 1850 to 1979. *See* West's Ann. Cal. Prob. Code § 1461, Historical and Statutory Notes (previously codified as Cal. Code Civ. Proc. § 1763 until 1931); *see also In re Peterson's Guardianship*, 191 P.2d 98, 99 (Cal. Dist. Ct. App. 1948) (noting California Probate Code section 1461 was based on California Code of Civil Procedure section 1763). "[W]hen Guam adopts a statute from California, California case law is persuasive when there is no compelling reason to deviate from California's interpretation." *Moylan I*, 2011 Guam 16 ¶ 28 (citing *Castino v. G.C. Corp.*, 2010 Guam 3 ¶ 22). Thus, we look

to California's case law from 1850 to 1979 to aid our interpretation of 15 GCA § 3802's notice requirements.

**[22]**     In *Snyder v. Superior Court of San DiegoCounty*, the court held that, under the statute, sufficient notice of the petition must include the time of the hearing, the place of the hearing, and be given to the potential ward at least five days before the hearing.  274 P. 337, 338-39 (Cal. 1929) (in bank); *see also McGee v. Hayes*, 59 P. 767, 768 (Cal. 1899) (per curiam) (holding sufficient notice must contain exact date and place of hearing before court has jurisdiction to make appointment for guardianship).  Similarly, the Ninth Circuit held that under section 896 of the Alaska Code,[1] notice must be served personally upon the potential adult ward.  *Martin v. White*, 146 F. 461, 465 (9th Cir. 1906) (opining that potential ward must be personally served notice because only interested party is potential ward, and they should merely need personal notice to prompt their presence and desire for an immediate hearing (citing *Evans v. Johnson*, 19 S.E. 623, 624-25 (W. Va. 1894))).

**[23]**     In *Grinbaum v. Superior Court in & for City & County of San Francisco*, the court held that notice must be given, regardless of the express statutory language, to satisfy due process of law.  221 P. 635, 640 (Cal. 1923) (in bank).  According to the court:

> [T]he personal liberty or property rights of a person alleged to be insane or incompetent cannot be invaded or impaired by the appointment of a guardianship over his person or estate without the giving to him of some form of notice sufficient to satisfy the constitutional requirement as to due process of law.

---

[1] Section 896 of the Alaska Code, the statute interpreted in *Martin v. White*, states:

When the relatives or friends of any insane person, or any other persons inhabitants of the precinct in which such insane person resides, shall apply to the commissioner by petition in writing to have a guardian appointed for him, the commissioner shall cause notice to be given to the supposed insane person of the time and place appointed for hearing the case, not less than ten days before the time so appointed; and if, after a full hearing, it shall appear to the commissioner that the person in question is incapable of taking care of himself, the commissioner shall appoint a guardian of his person and estate, with the powers and duties hereinafter specified.

*Martin v. White*, 146 F. 461, 463 (9th Cir. 1906).

*Id.* "The Due Process Clause requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Aflague*, 2020 Guam 18 ¶ 15 (quoting *Jones v. Flowers*, 547 U.S. 220, 226 (2006)).

[24]    In sum, to sufficiently serve notice per the requirements of 15 GCA § 3802 and due process, notice must: be personally served on the potential ward at least five days before the hearing; detail the time, place, and location of the hearing; and be served in a form that can reasonably apprise the potential ward of the purpose of the hearing so that the potential ward can prepare objections.

[25]    Richard argues that Yuk Lan was deprived of her due process protections because she was not properly served notice of the July 23, 2019 guardianship hearing, as the notice provided was deficient.   Appellant's Br. at 9-12.   Richard asserts that "[p]rospective wards, who oftentimes already suffer from partial cognitive impairment, let alone physical handicaps such as hearing, speech, or sight loss, need enough due process to apprise them of the date, time, and nature of the [c]ourt proceeding in order to prepare."  Appellant's Reply Br. at 1 (Nov. 2, 2020). "Vague, ambiguous, or non-contemporaneously served documents" may be unduly confusing for a prospective ward. *Id.*

[26]    The notice itself was delivered more than five days before the hearing date.  The notice included the time, date, and location of the hearing.  The notice also stated the purpose of the hearing, "Guardianship," which, when combined with the other documents served on Yuk Lan on May 29, 2019, such as the petition for general guardianship, presented Yuk Lan with sufficient information about the impending hearing.  Given the information provided and timely, personal service of the notice, we hold that service was proper.

[27]     Richard also argues the notice was vague and confusing, thus violating due process requirements, because Leialoha did not withdraw or refile the previous December 2018 special guardianship petition or the May 3, 2019 general guardianship petition. *See* Appellant's Br. at 12-13.   Richard asserts it was impossible to discern which guardianship hearing would be conducted on July 23, 2019. *Id.* at 13-14.

[28]     We find this argument unpersuasive, as these petitions were not ambiguous and did not refer to unresolved proceedings.   The December 2018 petition for special guardianship was resolved on May 14, 2019, when the court denied the petition in a Decision and Order.   The May 3, 2019 petition for orders pending a hearing was resolved on May 10, 2019, when the court issued a Decision and Order on the second *ex parte* request for funds to pay Yuk Lan's monthly expenses for care and maintenance.   The May 3, 2019 petition for a general guardianship was resolved when the court appointed Leialoha the limited guardian of Yuk Lan's estate.   Richard characterizes these petitions as confusing, leaving a reasonable person unable to discern which petition related to the July 2019 guardianship proceedings.   We disagree.   There is no extra procedural requirement for petitioners to "withdraw" or "refile" petitions after the court issues a decision and order, as Richard suggests, and no authority has been briefed explaining why we should require such a practice. *See* Appellant's Br. at 10–11.   While it may be better practice to serve the petition for guardianship, the notice of hearing, and other relevant documents contemporaneously, 15 GCA § 3802 does not require contemporaneous service.

**B.   The Trial Court Did Not Err in Appointing a Limited Guardian for the Estate or in Mandating a Bond for Less than the Value of the Estate**

     **1.   Limited guardianship**

[29]     Richard argues the trial court cannot allocate only partial control of Yuk Lan's estate to Leialoha.   Appellant's Br. at 19-20.   We disagree.

**[30]**     Title 15 GCA § 3502, General and Special Guardians, states: "Guardians are either general or special.  A general guardian is a guardian of the person or of the general estate of the ward within [Guam], or of both.  Every other is a special guardian."  15 GCA § 3502 (2005). This statute details two types of guardianships: one that is general, without specific limitations over the person or estate, and one that is limited.  Implicit in this dichotomy is the authority for the court to appoint one as a limited guardian, titled a "special guardian" by the statute.

**[31]**     This court has upheld and acknowledged the need and utility of a limited guardianship for Yuk Lan.  In *Moylan I*, this court held:

> The limited guardianship of Mrs. Moylan's estate authorized Kurt to assist his mother in managing a limited set of functions . . . .  [W]e find that the limited guardianship set up for Mrs. Moylan by the trial court adequately addressed her need for protection and right to autonomy.  The trial court developed a guardianship plan that protects Mrs. Moylan's autonomy as much as possible, while still affording her the assistance she needs.  As a result, the trial court did not abuse its discretion in appointing a limited guardian for the estate and for the person of Mrs. Moylan.

2011 Guam 16 ¶ 24.  In *Moylan I*, Richard made similar arguments about the appointment of a limited guardian.  We rejected his arguments, finding:

> While Richard is correct that the term "limited guardian" does not appear in the Guam code, the Guam code allows for "special guardians."  *See* 15 GCA § 3502 (2005); 19 GCA § 9105 (2005).  Guam classifies general guardians as "guardian[s] of the person or of all of the property of the ward within Guam," and special guardians as every other guardian.  19 GCA § 9104 (2005); *see also* 15 GCA § 3502; 19 GCA § 9105.  Though it may be more appropriate to consider Kurt and [Leialoha] to be special guardians over Mrs. Moylan, the trial court did not err in appointing Kurt and [Leialoha] as limited guardians.  The trial court closely and carefully analyzed Mrs. Moylan's mental and physical condition while making its guardianship decision and did not abuse its discretion in finding that a limited guardianship over the person and estate of Mrs. Moylan was appropriate.

*Id.* ¶ 25.

**[32]**     A California court has come to the same conclusion, holding:

> [T]he Probate Code provides that a general guardian is a guardian of the person or of the general estate of the ward, while every other guardian is a special guardian. This section would indicate that the Probate Court has inherent power to appoint such guardians 'other' than general guardians. It is not to be presumed that this language is meaningless.

*In re Corotto*, 270 P.2d 498, 503 (Cal. Dist. Ct. App. 1954).

**[33]**     There are strong policy reasons for limited or special guardianships. As we acknowledged in *Moylan I*, a limited guardianship allows the court to "balance between the need for the ward's protection and the ward's right to autonomy." 2011 Guam 16 ¶ 24. Limited guardianship has been recognized as a 'best practice' by the ABA Commission on the Mentally Disabled. *See* Jamie L. Leary, *A Review of Two Recently Reformed Guardianship Statutes: Balancing the Need to Protect Individuals Who Cannot Protect Themselves Against the Need to Guard Individual Autonomy*, 5 Va. J. Soc. Pol'y & L. 245, 256 (1997). Limited, special guardianships enable the court to use the least restrictive means to protect a ward. *See id.* Limited guardianships allow the court to balance the need to protect the incapacitated individual with that individual's right to autonomy. *See In re Estate of Bennett*, 461 N.E.2d 667, 671 (Ill. App. Ct. 1984).

**[34]**     It is within the Superior Court's power to appoint a limited, special guardian of Yuk Lan's estate.

### 2. Bond amount

**[35]**     The court held that Leialoha had to obtain a surety bond in the amount of $250,000 to satisfy the requirements of 15 GCA § 4001. Richard argues this statute requires the bond posted by a guardian of an estate to be for at least the entire value of the estate. Appellant's Br. at 22.

**[36]**     The plain language of a statute must be the starting point for statutory interpretation. *Aguon v. Gutierrez*, 2002 Guam 14 ¶ 6 (quoting *Pangelinan v. Gutierrez*, 2000 Guam 11 ¶ 23); *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982).  "Absent clear legislative intent to the contrary, the plain meaning prevails."  *Sumitomo Constr., Co. v. Gov't of Guam*, 2001 Guam 23 ¶ 17.  In interpreting a statute, we have recognized that "the court's task is to determine whether or not the statutory language is 'plain and unambiguous.'  'The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'"  *Aguon*, 2002 Guam 14 ¶ 6 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340–41 (1997)).  "[I]n expounding [on] a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy."  *Sumitomo*, 2001 Guam 23 ¶ 17 (quoting *Kelly v. Robinson*, 479 U.S. 36, 43 (1986)).

**[37]**     Section 4001 mandates a guardian of an estate furnish a bond "which sum shall be not less than twice the value of the personal property and twice the value of the probable annual rents, issues and profits of all property belonging to the ward."  15 GCA § 4001 (2005).  If the guardian uses a surety company, the bond must not be "less than the value of the personal property and the probable annual rents, issues and profits of all property belonging to the ward."  *Id.*

**[38]**     The statute gives little guidance on a court's ability to adjust the amount of the bond.  In *Moylan I*, we held that 15 GCA § 4001 does not articulate its every exception.  *See* 2011 Guam 16 ¶¶ 31-32.  We looked to the intent of section 4001 and held that it applies only to guardians of an estate, not guardians of the person, despite no explicit caveat in the text defining this

demarcation.  *Id.*  We are now compelled again to look to the intent of this text and delineate the equitable boundaries of the statute.

[39]    The Supreme Court has held that when interpreting statutes, we must ensure our interpretation gives a "sensible construction":

> General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence.  It will always, therefore, be presumed that the legislature intended exceptions to its language which would avoid results of this character.  The reason of the law in such cases should prevail over its letter.

*Holy Trinity Church v. United States*, 143 U.S. 457, 461 (1892) (quoting *United States v. Kirby*, 74 U.S. 482, 486-87 (1868)).  When interpreting a statute, we must be mindful of the wrong the statute is designed to prevent.  *See id.*  Our interpretation must consider whether the ends will cause injustice or absurdity and avoid interpretations contrary to the statute's spirit.  *See Mayor of New York v. Lord*, 18 Wend. 126, 132 (N.Y. 1837).

[40]    In *Moylan I*, we stated the purpose of the guardianship bond is "to ensure faithful administration by the guardian."  2011 Guam 16 ¶ 32.  The bond prevents violations and abuses of the fiduciary relationship.  *See* Katherine Gorski, *Conservatorship and Guardianship Bonds: State Statutory Requirements*, 35 Bifocal 133 (2014).  It becomes an "insurance policy" that protects the ward if the guardian mishandles the ward's assets.  *Id.*

[41]    The guardian's management of the ward's care or the ward's property is also controlled and regulated by the court.  15 GCA § 3501 (2005).  In making decisions related to incompetent wards, courts have a duty to act in the wards' best interests.  *See Moylan I*, 2011 Guam 16 ¶ 17.  "[B]road discretion [is] vested in the trial court to exercise its powers so as to serve the best interests of the [ward]."  *Moylan IV*, 2018 Guam 15 ¶ 10 (alterations in original) (quoting *Guardianship of Brown*, 546 P.2d 298, 305 (Cal. 1976) (in bank)).  When necessary to avoid injustice or absurdity or for other bona-fide reasons, the court, exercising its broad discretion and

power to regulate and control the guardian under 15 GCA § 3501, may modify the bond required by 15 GCA § 4001 if modification is in the ward's best interest. If the trial court does this, then the trial court must justify the modified bond amount, explaining why such modification is in the best interest of the ward.

[42]     In calculating the bond amount for a special guardian, the trial court should be guided by the fiduciary duties of the guardian and the guardian's liability. Title 15 GCA § 4001 states the bond calculation should relate to the "personal property" of the ward.[2] Courts may consider the personal property of the ward within the "possession" of the guardian. *See In re Rising*, 112 N.Y.S.2d 349, 353 (Sur. 1952); *Hornaday v. Hornaday*, 213 P.2d 91, 99 (Cal. Dist. Ct. App. 1949) (holding that guardian's bond makes them liable only for "money" and "movables" that come into their hands). The trial court may be guided by the actual liability of the guardian, which is the purpose of the bond statute. *See May v. Cont'l Cas. Co.*, 936 A.2d 747, 751 (D.C. 2007); *see also People ex rel. Sterling v. Huffman*, 55 N.E. 981, 984 (Ill. 1899) ("The contract of a surety is to be construed strictly, both in law and equity; and his liability is not to be extended, by implication, beyond the terms of his contract. To the extent, and in the manner, and under the circumstances pointed out in his obligation is he bound, and no further."); *Am. Indem. Co. v. Noble*, 235 S.W. 867, 868 (Tex. Comm'n App. 1921) (holding bond was only to be commensurate with liability of guardian).

[43]     The trial court did not err when it established the bond amount of $250,000, finding that amount satisfied the requirements of 15 GCA § 4001. The court based the bond amount on the property—i.e., accounts—to which Leialoha has access. The bond amount sufficiently reflects

---

[2] Section 4001 bases its bond calculation on "which sum shall be not less than twice the value of the personal property and twice the value of the probable annual rents, issues and profits of all property belonging to the ward." 15 GCA § 4001.

the fiduciary duties and liability of Leialoha in relation to the portion of Yuk Lan's estate over which she has control. The court properly exercised its discretion and acted within the powers granted by 15 GCA § 3501 in not requiring a bond equal to the value of Yuk Lan's entire estate.

### C. The Superior Court Did Not Err in Appointing Leialoha the Special Guardian of the Estate

[44]     Richard argues the trial court abused its discretion by appointing Leialoha as the limited guardian over Yuk Lan's estate, as she had previously abused her guardianship position. Appellant's Br. at 29-31. We disagree.

[45]     Richard points to the prior litigation and findings of Leialoha's wrongdoing and multiple attempts to improperly procure her parents' finances. *Id.* Leialoha responds that the guardianship appointment is not an abuse of discretion, as this court has already previously recognized that while wrongdoing occurred, none of the wrongdoing was done with an ill will towards Yuk Lan. Appellee's Br. at 22-23 (Oct. 19, 2020); *see Moylan I*, 2011 Guam 16 ¶ 67.

[46]     "[C]ourts have a duty to protect the best interests and welfare of a ward." *Moylan I*, 2011 Guam 16 ¶ 17. The appointment of a guardian is proper when it is in the best interest of the ward, whether the ward is a minor or an adult. *Id.* The trial court has broad discretion "to exercise its powers so as to serve the best interests of the [ward]." *Moylan IV*, 2018 Guam 15 ¶ 10 (quoting *Brown*, 546 P.2d at 305). The best interest standard is recognized as the most important, decisive factor in determining guardianship. *See In re Guardianship of Autio*, 747 N.W.2d 600, 603 (Minn. Ct. App. 2008); *see also Brown*, 546 P.2d at 305.

[47]     The court has over a decade of court filings and hearings on the suitability of Leialoha as a guardian. *See, e.g.*, *Moylan IV*, 2018 Guam 15 ¶ 14. Richard correctly notes the previous finding of Leialoha improperly taking funds from her parents' life savings. But this court upheld the Superior Court's findings that the act was not out of "ill will" or any "adverse pecuniary

interests" towards her parents. *Moylan I*, 2011 Guam 16 ¶ 20. The court noticed these prior filings. The court based its decision on over a decade of evidence showing Leialoha has cared for Yuk Lan, paid her bills, fed her, transported her, and made all necessary arrangements. RA, tab 647C at 8 (Finds. Fact & Concl. L.). The court noted that Leialoha also demonstrated financial responsibility for her mother's estate, as evidenced by the regular financial reports Leialoha filed with the court over the years. *Id.* at 11. The court also recognized that Leialoha has been working with an accountant to prepare monthly reports for the estate and testified she would continue to work with this accountant. *Id.* This evidence cumulatively shows substantial evidence on which to conclude it is in the estate's best interest to appoint Leialoha as a limited, special guardian.

[48] Richard characterizes the limited guardianship as giving Leialoha "sole and unfettered purview over Yuk Lan's financial affairs." Appellant's Br. at 30. This is a mischaracterization of the Superior Court's grant of a special limited guardianship allowing Leialoha to access a single account, used for collecting rents from Yuk Lan's lessees, and allowing Leialoha to use the monies only for specified, predetermined purposes.

[49] The trial court did not abuse its discretion by appointing Leialoha as the limited guardian of Yuk Lan's estate, as there is significant evidence that Leialoha has and will continue to responsibly attend to Yuk Lan's affairs.

### D. The Trial Court Abused its Discretion by Failing to Appoint a Guardian for the Rest of Yuk Lan's Estate

[50] While it is within the trial court's power to appoint a special or limited guardian, the trial court abused its discretion in not appointing a guardian for the rest of Yuk Lan's estate. Kurt managed all of Yuk Lan's financial affairs after a finding of Yuk Lan's incompetency in 2008. Kurt later resigned as guardian. Yuk Lan's competency was never restored, a process detailed in

15 GCA §§ 3901-3903.  The trial court's appointment of Leialoha as the special guardian of the estate did not include all financial affairs previously managed by Kurt.  As a result, most of Yuk Lan's property that she was already considered unable to properly manage is now without any management at all.  Yuk Lan needs a qualified guardian to protect these considerable assets.  The trial court abused its discretion when it declined to appoint a guardian for the rest of the estate that Leialoha did not have authority to manage.

[51]    We remand to the trial court to appoint a guardian for the rest of Yuk Lan's estate.

## V.  CONCLUSION

[52]    For the forgoing reasons, we **AFFIRM** the trial court's findings about the notice, bond, and appointment of Lina Leialoha Moylan Alston as the special guardian of Yuk Lan Moylan's estate.   We **REMAND** to the Superior Court for further proceedings necessary for the appointment of a guardian for the rest of Yuk Lan Moylan's estate.

|   |   |
|---|---|
| /s/ | /s/ |
| ROBERT J. TORRES | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |

/s/
F. PHILIP CARBULLIDO
Chief Justice